(No. 32753.—

HUNTER PACKING COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (HELEN MINOCK *et al.*, Plaintiffs in Error.)

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

McRoberts & Hoban, of East St. Louis, for plaintiffs in error.

Pope & Driemeyer, of East St. Louis, for defendant in error.

Mr. Justice Hershey delivered the opinion of the court:

Helen Minock, widow of Edmond Minock, deceased, filed an application with the Industrial Commission to recover compensation for the death of her husband, which, she alleged, arose out of and in the course of his employment with the Hunter Packing Company. Margaret Minock, deceased's minor daughter, was subsequently included as · an additional petitioner. An arbitrator heard the cause and

entered an award for two hundred and ninety-six weeks' compensation at $19.50 a week, and one week at $13, upon finding that Edmond Minock sustained accidental injury arising out of and in the course of his employment which was the proximate cause of his death. The Industrial Commission sustained and affirmed the award of the arbitrator and ordered the award to stand as the decision of the commission. The circuit court of St. Clair County reversed the decision of the commission and set aside the award, entering judgment for the defendant in error, Hunter Packing Company. We have allowed the plaintiffs in error's petition for writ of error for a further review.

Edmond Minock was forty years of age at the time of his death on December 17, 1948. He was married and the father of a twelve-year-old daughter. For a number of years prior to his death he had been employed by the Hunter Packing Company as a hog driver in the East St. Louis plant. It was his duty to bring the hogs from the pens to the slaughtering floor. This necessitated his driving the hogs before him through various runways which were under a constant spray of water in order to wash the hogs.

Deceased reported to work on the morning of December 17, 1948, and was seen by a fellow employee driving some hogs. A short time later this same employee discovered Edmond Minock, either dead or dying, on the floor of a small toilet located on the premises. This toilet room was about five feet square, contained a urinal, a toilet bowl with a pressure tank, an overhead light attached to the ceiling about ten feet above the floor, and a metal strip electric heater. Deceased, when discovered, was lying on the floor on his left side with his head near the door, his back up against the heater, his legs spraddled and his feet pointing towards the toilet bowl. His hands were lying in front of his abdomen, and he was fully clothed. The employee who discovered Minock immediately summoned

one Jack Blane, foreman of the hog-killing department, who took one look at Minock and went for more help. He returned in a "minute or so" and it was then someone called his attention to smoke coming from where the deceased's back lay against the heater. Blane then pulled the heater switch. Edmond Minock was pronounced dead upon arrival at the hospital.

. Dr. Robert A. Little represented Mrs. Minock at a *post-mortem* examination performed by Dr. C. C. Kane, coroner of St. Clair County, and his consultant pathologist, Dr. Hagebusch, at about midday on the date of death. Dr. Little observed the autopsy and testified for the plaintiffs in error. He stated that he observed deep burns to the center of the back, externally and internally. These burns were about five or six inches long and several inches wide. He examined the heart and other organs as they were opened and saw nothing to indicate a stopping of the coronary vessels, and no evidence of blood clot in the coronary vessels. He then testified that he observed no objective findings of disease or injury to the arteries, liver, lungs, or the heart.

The wife of the deceased, who had not seen him for fourteen weeks before his death and had filed suit for divorce, as well as deceased's mother, who saw deceased the evening before his death, testified that he was never sick and had never complained of any illness or disease.

John Reck, chief engineer of the packing company, testified that he examined the heater in the toilet room just after the death of Edmond Minock. He described the heater as consisting of two strips of aluminum steel, each of which covered a heating element. The heating element was a strip of metal covered by mica insulation for the purpose of insulating the heating element from the metal cover. The two strips were held about two and one-half inches from the wall by a metal frame at the top and bottom of the strips. Two terminals protruded from the back of each strip to which the electrical wires were attached.

Reck stated that he tested the metal strips with a megometer and could discover no short circuit within the heater or the electric leads attached to it. The toilet room was then closed off from further use for some time. He also testified the floor of the toilet room was damp when he arrived there on December 17, 1948.

Ralf Toensfeldt, a consulting engineer, testified for the defendant in error. He was requested by the Hunter Packing Company to examine this electrical strip heater, and he did so on December 29, 1948. He testified the heater was perfectly insulated, and operated satisfactorily during his examination. He stated that if anyone touched the two terminals they would be shocked. From the terminals six inches of wire extended which were insulated but not covered by metal conduit.

Upon the presentation of this evidence the arbitrator entered his award of $19.50 per week for 296 weeks, and one week at $13, for the reason that the injuries sustained caused the death of decedent on December 17, 1948. The cause then came on for review before the commission by petition, and was there argued orally. Upon a consideration of this record the commission determined that the award of the arbitrator was correct and ordered it to stand as the decision of the commission.

Writ of *certiorari* was then prosecuted by defendant in error to the circuit court of St. Clair County where the cause was considered upon the record, written briefs and argument. The court found that plaintiffs in error failed to prove that the death of Edmond Minock arose out of his employment, or that his death was traceable to any injury received in the course of his employment. It therefore determined that the decision of the Industrial Commission was against the manifest weight of the evidence and ordered the award of the arbitrator and the order of the commission set aside and entered judgment for the Hunter Packing Company and in bar of action.

An injury, to be compensable, must arise out of and in the course of the employment or it must be incidental to the employment. Whether or not the injury arises out of and in the course of the employment is a question of fact to be determined by the Industrial Commission from reasonable inferences and conclusions drawn from the evidence presented. The findings of the commission upon questions of fact will not be set aside by this court unless they are manifestly against the weight of the evidence. An employee is engaged in the course of his employment when the injury occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it. An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the condition under which the work was to be performed and the resulting injury. It is not essential to the right to receive compensation that the employee was working at the time when the injury was received. A risk may be incident to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith. *Landon* v. *Industrial Com.* 341 Ill. 51.

The facts show that decedent was discovered, dead or dying, lying on the floor of and against the heater located in a toilet provided for and regularly used by the employees of the Hunter Packing Company. It is a rule of general application that an employee, while engaged in the work of his employer, may do those things which are necessary to his health and comfort, even though they are personal to himself, and such acts will be considered incidental to the employment. Retiring to a toilet to meet the demands of personal health or comfort is certainly within those acts considered incidental to the employment. (*Grola* v. *Industrial Com.* 388 Ill. 114.) It is reasonable to infer that any

injury decedent suffered was received in the course of his employment. He had reported to his employment on the morning of December 17, performed his duties, and was discovered about forty-five minutes later lying on the floor of the toilet, dead or dying. The only injury discovered during the autopsy was a deep burn on the back, where the body had rested against the toilet heater.

The established rule is that it is the province of the Industrial Commission, qualified by experience and special study, to draw reasonable conclusions and inferences from evidentiary facts in workmen's compensation proceedings, and the courts are not privileged to substitute their judgment for factual findings of the commission unless they are clearly and manifestly contrary to the weight of the evidence. (*Jefferson Ice Co.* v. *Industrial Com.* 404 Ill. 290.) It has very often been said that liability under the Workmen's Compensation Act cannot rest upon imagination, speculation or conjecture, or upon two views equally compatible with the evidence, but such liability must arise out of facts established by a preponderance of the evidence. (*Nelson* v. *Industrial Com.* 346 Ill. 82; *Republic Box Co.* v. *Industrial Com.* 336 Ill. 343.) This statement may generally be found in those cases where the fact of employment was in issue, or where the actual cause of death or disablement was very far removed in time or medical connection from the injury for which compensation is claimed. This is not that kind of a case. Employment of the decedent by the defendant in error is not disputed, nor are the facts that decedent reported for work on December 17, performed his duties, and was discovered dead or dying on the employer's premises during the hours of his employment.

An injury may be said to have arisen out of the employment, when, from the attendant circumstances there is apparent to the rational mind a causal connection between the conditions under which the work was performed and the injury. The fact that an injury resulting in death

arose out of the employment need not be proved by direct evidence, but may be established by circumstantial evidence leading to a fair, logical and reasonable inference that the injury originated in a risk of the employment or was incidental to the nature and conditions of the employment. (*Jefferson Ice Co.* v. *Industrial Com.*) Decedent's mother, with whom he had spent the evening before his death, testified he had never been sick or complained of being sick, and did not do so on that last evening. His good health was corroborated by his wife. Moreover, the undisputed testimony of Dr. Robert Little, who was present at the autopsy and examined all vital organs, indicates no evidence of disease or coronary difficulty. The evidence discloses that his employment required decedent to walk through runways constantly sprayed with water, and it is entirely logical that his clothing would become dampened, and that he might attempt to warm himself or dry his clothing when he retired to this toilet to attend a call of nature. Defendant in error's own witness and chief engineer acknowledged that the toilet floor was wet on that fatal morning. It is undenied that the witnesses who discovered the body found it with the back resting against the electric heater whose 220 volts were fully capable of causing the death of decedent. The heater was positively activated, as smoke was discovered arising from the junction of the heater and decedent's body, and deep burns were found on decedent's back. No evidence was offered by defendant in error giving rise to any other possible cause of death, or dispelling the possibility that death occurred from decedent's coming in contact with the electric strip-heater. It is true that there is no direct evidence as to the cause of Minock's fatal injuries, but there can be logically drawn from the uncontroverted circumstantial evidence, and the reasonable inferences arising therefrom, the legitimate conclusion that his injuries arose out of or were incidental to his employment by the Hunter Packing Company. It is not illogical to

conclude that while drying or warming himself, decedent inserted his hand or hands behind his back so that they slipped behind the heater contacting the terminals, and received a fatal shock. The position of the body, especially the spraddled position of the legs, together with the total lack of any evidence of disease, blood clot, bruises or other outward indication of a severe blow or bump, makes it most logical that decedent came in contact with some part of the heater receiving such a shock that he collapsed and lay against the activated heater.

In view of the uncontroverted nature of this circumstantial evidence, and the failure on the part of defendant in error to produce evidence refuting the logical conclusion of fatal injury or raising other possibilities of fatal agency, it cannot be said that the challenged finding of the Industrial Commission is based upon speculation or conjecture, or is against the preponderance of the evidence. Where the inferences drawn by the Industrial Commission are clear and reasonable, this court will follow the action of the Industrial Commission and will not discard permissible inferences drawn by the commission merely because other inferences might have been drawn from such facts. This court will not substitute its judgment for that of the commission unless we can say that the finding of the commission is clearly and manifestly against the weight of the evidence. (*Fluor Corp.* v. *Industrial Com.* 398 Ill. 616.) We cannot say that the commission's findings are against the manifest weight of the evidence and consequently neither this court nor any other court, under such circumstances, may substitute its judgment for that of the commission. For these reasons the judgment of the circuit court of St. Clair County is reversed and the award of the Industrial Commission confirmed.

*Judgment reversed, award confirmed.*