(No. 40772.—

OWENS-ILLINOIS GLASS COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Charles Booth, Appellee.)

*Opinion filed March 28, 1968.*

ANGERSTEIN & ANGERSTEIN, of Chicago, (OSCAR P. CHIAPPORI, SIDNEY Z. KARASIK, and GEORGE W. ANGERSTEIN, of counsel,) for appellant.

McCABE & VENIT, of Chicago, (JOHN COLLINS, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

At issue in this Workmen's Compensation Act case is an arbitrator's award for permanent loss of use of 10% of each of claimant's arms and left leg. This award was affirmed by the Industrial Commission and the circuit court of Cook County. While conceding that some temporary disability existed, the employer urges that the finding as to permanent loss of a fraction of the use of the arms and leg is contrary to the manifest weight of the evidence.

Claimant Charles Booth had been employed by respondent some 10 or 11 years, and was working on April 27, 1964, as a "tow motor" driver and starch mixer. His duties required him to move bags of starch weighing 100 lbs. each and rolls of paper 50″ in diameter and varying from

46″ to 85″ in length. These rolls weighed between 2000 lbs. and 5000 lbs. each. The bags and rolls were moved by means of the "tow motor" (a hydraulic lift machine) to a corrugator and mixing vats. Claimant then opened the bags of starch, manually lifted them to chest height and emptied their contents into the top vat. In the course of a day's work some 22 or 33 bags of starch would be handled, an undisclosed portion of which was apparently emptied into a lower vat necessitating less lifting. Claimant testified that on April 27, while hand pushing a roll into the corrugator "It stopped on me, and so the corrugator helper came and me and him pushed it, and pain hit me in my arm and in my back." Claimant further testified that he told his foreman what had happened and was sent to the personnel office where he was given a bottle of liniment for his back. Apparently another employee replaced claimant in the lifting and pushing for the balance of the day, and during that period claimant operated the "tow motor." On the following day claimant saw the company doctor by whom he was examined and given "a shot in the back" after which he returned home. The next day claimant called the personnel office and then saw Dr. Charles N. Pease twice within a week. Dr. Pease told Booth to "take it easy" and "do no heavy work", prescribed "some pills" and "hot packs." Claimant was off work five or six days and then returned to his regular job. He saw Dr. Pease one more time and was told he should not have returned to work but replied that he "had a wife and seven kids."

Claimant had suffered a minor back injury in 1957 for which compensation was paid, but had no further difficulty prior to the episode in question excepting an occasion in 1960 when he slipped and fell while carrying a bag of starch and "had a little back trouble then" which bothered him occasionally "for about a year or so" but no compensation was claimed or paid. He testified that, following his return to work on May 4, 1964, he had shoulder and arm pain and

his legs hurt when he picks up heavy things, he has pain and "weakens", but this doesn't occur every day and he sometimes goes as much as three days without pain. "Some days it bother me and some days it don't." He goes to the personnel office several times a week and gets aspirin for the pain.

Dr. Walter J. Barth examined claimant in June, 1964, and testified on his behalf. Dr. Walter W. Schwartz examined Booth the following September and appeared for respondent. Their testimony could scarcely have been more antithetical. Dr. Barth found the cervical paravertebral musculature to be markedly spastic bilaterally. Both trapezii muscles were spastic from the occipital line of the skull down to the interscapular area and out laterally to the acromion process. Motion of both arms was restricted at the shoulder level so that abduction could be performed to only 100 of a normal 150 degrees. The internal rotation was restricted at 20° of a normal 40° and external rotation 45° of a normal 90°. Flexion and leg raising were restricted in specified degrees. The fabere and Lasegue signs were positive bilaterally, the latter being an indication of sciatic nerve root irritation, and the former a restriction of motion at the extremity of the hip joint. The diagnosis was "trauma strain and sprain of the cervical region of the spine with clinical evidence of nerve root irritation involving both upper extremities, trauma strain and sprain of the lumbar region of the spine with clinical evidence of injury to the supporting structures of both ligamentous and musculature, especially the interarticular and interspinous ligaments, and with nerve root irritation involving both lower extremities causing the motor disturbances." The doctor's opinion was that the condition was permanent and might or could have been causally related to the April 27 episode.

Dr. Schwartz found no spasticity or loss of motion and testified the Lasegue sign and Patrick tests were negative on both sides. He found certain congenital spinal anomalies

the effect of which was that "some of these spines don't stand up as well as a normal spine would be to hard usage." He found no evidence of traumatic injury.

An additional medical witness, Dr. Leonard R. Smith, was called by respondent at the hearing before the Commission. He examined claimant July 20, 1965, and found a congenital spinal anomaly in that there was a transitional vertebra where the fifth lumbar vertebra had not completed separation from the sacrum. He attributed the narrowing of the disc space to the presence of the transitional vertebra and found no evidence of injury.

We have set forth the factual situation at some length for, despite the vigor with which respondent argues that the Commission action is contrary to the manifest weight of the evidence, it seems to us clear that it is not. We have repeatedly stated that we will not substitute our judgment on factual questions for that of the Commission (*Swift and Co.* v. *Industrial Com.*, 37 Ill.2d 145, 147); that it is the function of the Commission to determine the facts and to draw reasonable inferences and conclusions from the evidence and that the function of this court is limited to a determination of whether the Commission's findings are against the manifest weight of the evidence (*Field Enterprises* v. *Industrial Com.*, 37 Ill.2d 335, 339; *Chicago Park District* v. *Industrial Com.*, 36 Ill.2d 212, 216); that determination of disputed questions of fact, including the nature and extent of the disability as well as the matter of causal connection, is primarily a function of the Commission (*Dattilo* v. *Industrial Com.*, 37 Ill.2d 390, 391); and that where the evidence is conflicting, or of such a nature that different inferences may be reasonably drawn therefrom, we will not discard permissible inferences drawn by the Commission merely because it or we might have drawn other inferences from the facts. *Shell Oil Co.* v. *Industrial Com.*, 38 Ill.2d 286, 288; *Farace* v. *Industrial Com.*, 34 Ill.2d 80, 84.

We have reviewed the recent cases cited by respondent (*Rockford Clutch Division, Borg-Warner Corp.* v. *Industrial Com.*, 37 Ill.2d 62; *Allis-Chalmers* v. *Industrial Com.*, 35 Ill.2d 367; *Checker Taxi Co.* v. *Industrial Com.*, 33 Ill.2d 264; *Arbuckle* v. *Industrial Com.*, 32 Ill.2d 581) in which we have reversed or reduced permanent partial disability awards made by the Commission and find them to be based upon substantial distinguishing factors. In *Rockford Clutch* an award based primarily upon the claimant's testimony was set aside because claimant's actual behavior was completely inconsistent with his testimony. We reversed the award in *Allis-Chalmers* because the medical evidence did not even "remotely suggest" any permanent loss of use of the leg, and there was no evidence of leg pain except claimant's testimony on review that he had "some" since the hearing before the arbitrator. In *Checker Taxi* we reversed an award for loss of arm use because the medical testimony contained no reference to injury or treatment or loss of use of the arm and because of the total absence of any objective evidence of injury thereto. Again in *Arbuckle* the award was reversed because of the lack of medical support for a finding of permanent injury and the absence of any other substantial evidence thereof.

That claimant has worked steadily at his employment since shortly after the injury does not automatically preclude a schedule award for permanent loss of use of a portion of the arms and leg. (Larson, The Law of Workmen's Compensation, vol. 2, §§ 57.10, 57.20, 57.31.) Nor can we say, in view of claimant's testimony as corroborated by Dr. Barth, that the Commission's finding of permanent partial loss of use is contrary to the manifest weight of the evidence even though we might not have initially resolved the question in the same way.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*