374

(No. 53123.—

RUDOLPH VAN OVERMEIREN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Diamond International Corporation, Appellee).

*Opinion filed March 18, 1981.*

Tuite, Morrissey, Gesmer & Finnegan, of Rockford (Jason N. Gesmer and Gerald F. Tuite, of counsel), for appellant.

James C. Serkland, of Scheele, Serkland & Boyle, Ltd., of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Pursuant to the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) an arbitrator for the Industrial Commission found claimant, Rudolph Van Overmeiren, had suffered work-related injuries while employed as a maintenance man by respondent, Diamond International Corporation. Claimant was awarded necessary medical, surgical and hospital expenses and compensation at $205 per week for 35 1/7 weeks of temporary total incapacity and an additional 100 weeks for 20% permanent partial disability. The employer sought review by the Commission, which reduced the award to 1 2/7 weeks' compensation for temporary total incapacity and 20 weeks for permanent and complete loss of 5% of the use of both legs. The circuit court of Kane County confirmed the Commission's award. Claimant's appeal is before us pursuant to our Rule 302(a). 73 Ill. 2d R. 302(a).

Claimant had been employed by respondent for some 21 years as a maintenance man, doing various types of

repair and maintenance work. He testified that on Friday, March 26, 1976, he slipped on some accumulated water and cutting oil on the floor of the machine shop in front of a knife-grinding machine which he had been using, and fell on his "fanny." He testified that when he arose from the floor "my back was aching and my legs were rather numb." He continued working. About an hour later as John Jackson, his foreman, walked through the shop, claimant said to him, "Hey, John, I just slipped and fell over here by the knife grinder." There were other people around and some noise and claimant did not know whether the foreman, who looked his way but made no reply, actually heard him. Claimant finished his shift and worked the following day, Saturday, although his back and leg were still paining him. Claimant's work sheet for Friday, on which he was required to list the work he did each day and the time spent on it, contained no reference to working at the knife grinder.

Claimant also testified that he spoke to a girl who handled insurance in respondent's office—Beverly Tierney. While unsure of the date or content of the conversation, claimant ultimately stated he thought he told her of his injury on the date it occurred. Beverly Tierney testified, however, that claimant made no mention of an injury on March 26, but did, on Monday, March 29, tell her he had fallen a couple months earlier and wanted to see the doctor about his back. Claimant did not remember falling earlier, but when asked whether he might have told Beverly Tierney he did, said "There's a possibility." John Jackson testified claimant did not at any time tell him of a fall on the 26th—that the only injury he had any knowledge of was an accident with a saw in which claimant had cut his right leg.

It is clear that claimant did see Dr. Liesen, a doctor who cared for company employees, on March 29 regarding the pain in his back and right leg. The doctor sent him to

Delnor Hospital for X rays and subsequently released him for work on April 5. Claimant returned to work, the pain persisted, and he saw Dr. Liesen again on April 26, at which time the doctor told him that he "had arthritis of the spine and deterioration of the back bones," and that the fall had not caused it but had activated it. Although claimant testified that commencing in June or July he had "quite a bit of pain day in and day out," and was receiving no medication or treatment, there is no indication of any complaint by him to the company prior to February 1977. During those intervening months claimant testified he performed his regular duties involving "pulling and yanking" electrical wiring and moving objects weighing up to 200 pounds.

In February 1977 claimant cut his right leg with a portable electric saw. Apparently a claim for compensation was filed and settled. The lawyers who represented claimant in that case referred claimant to Dr. J. S. Berry in May, presumably for his leg and back pain. Dr. Berry gave him a disability certificate to deliver to his employer, hospitalized claimant, and had various tests done. His diagnosis was "Possible S1 radiculopathy and/or lumbar instability." Claimant was placed in a body cast for several weeks with a laminectomy or fusion or both as future possibilities. A laminectomy and discectomy were performed in June because of a herniated nucleus pulposus at L5-S1, and claimant remained off work and under Dr. Berry's care with periodic injections being given. In October a body cast was again used for several weeks and helped the pain while it was on. The doctor discharged claimant for return to work on January 3, 1978, with the limitation that he not lift more than 50 pounds. He applied to respondent for reemployment and was sent to Dr. Liesen, who approved his return to work with the weight limitation and an added restriction of limited bending. Claimant testified he was not called to return to

work, that when he inquired he was told another person had taken over his job, and that "they were looking for something he could handle." He drew unemployment compensation, sought work elsewhere, last saw Dr. Berry in February for an injection and now does housechores, hangs clothes on the line, gets meals, etc. He has pain in his lower back and legs and it hurts to carry groceries or bend over. He rests an hour or two a day and walks two miles per day as recommended by the doctor. He wears a corset part of the time and whenever he is driving. He testified he has been unable to secure employment.

The medical evidence consisted of written reports from several doctors. Dr. Berry's original diagnosis was noted earlier. A May 24, 1977, letter from Dr. K. Vaidya of the Department of Physical Medicine and Rehabilitation of the Freeport Clinic to Dr. Berry indicated his impression that his findings during an examination of claimant "may suggest old S1 radiculopathy." A report of the Department of Radiology at Freeport Memorial Hospital on the lumbar spine, chest and results of a lumbar myelogram found minor arthritic changes but no other abnormalities. A report from Dr. Gerald McDonald recited findings resulting from his examination of claimant and a diagnosis of "Acute injuries of the lower back and posterior pelvis with damage to the intervertebral disc at the L5-S1 segment; status, post-surgical laminectomy with residual bilateral sciatic nerve root involvement." It was also stipulated that, if called as a witness, Dr. McDonald would testify in response to a hypothetical question encompassing claimant's testimony that the alleged March 26 accident might or could be causally related to the current condition of ill-being, that it might or could have aggravated a previous condition of ill-being, and that the current condition is permanent. Dr. Liesen's report was offered in evidence by respondent, but an objection to its admissibility was sustained and he was not called as a witness. A report by

Dr. George Cooper was admitted, and it was stipulated that, if called as a witness, Dr. Cooper would testify, in response to alternative hypotheticals incorporating an alleged fall on March 26 and an alleged fall two months earlier, that in neither case was there a causal relationship between the fall and claimant's condition of ill-being.

It is axiomatic, of course, that "it is primarily the responsibility of the Industrial Commission to determine questions of fact, including the nature and extent of the disability, to draw reasonable inferences from the evidence, and to determine the credibility of the witnesses. *** [I] t is not our function to disapprove of an award simply because it may not conform to our personal opinion as to the nature and extent of the injury." (*Bishop v. Industrial Com.* (1980), 78 Ill. 2d 315, 317-18.) "Only when the decision of the Commission is against the manifest weight of the evidence will this court interfere." *Caterpillar Tractor Co. v. Industrial Com.* (1980), 82 Ill. 2d 1, 6; *Seiber v. Industrial Com.* (1980), 82 Ill. 2d 87.

It is clear that the Commission agreed with the arbitrator that a fall had occurred and that notice of the accident had been given respondent. The difference lies in the fact that the Commission apparently did not accept Dr. McDonald's opinion that a causal connection existed between the accident and the surgery performed some 15 months later. The claimant suggests the explanation for this is that the Commission disapproves of Dr. Berry, and that this bias and prejudice were apparent from the questions directed at counsel during oral argument before the Commission. That argument, however, is not reproduced in the record before us. A more likely explanation, in our judgment, is the absence of any complaint to respondent over a period of many months during which claimant maintains he was suffering considerable pain each day. It was not until he lacerated his right leg with a portable saw that claimant returned to Dr. Liesen, and only after con-

sulting counsel regarding a compensation claim for that injury was he seen by Dr. Berry.

We have frequently indicated "that the burden is upon the party seeking an award to prove by a preponderance of credible evidence the elements of his claim, particularly the prerequisite that the injury complained of arose out of and in the course of his employment." (*Republic Steel Corp. v. Industrial Com.* (1980), 82 Ill. 2d 76, 85; *United Airlines, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 85, 96.) Given the conflicting medical opinions regarding causation and the credibility questions, we cannot say that the Commission's modification of the arbitrator's award is contrary to the manifest weight of the evidence. *Moore Electric Co. v. Industrial Com.* (1980), 83 Ill. 2d 43, 47.

The judgment of the circuit court of Kane County is accordingly affirmed.

*Judgment affirmed.*