(No. 54831.—

PAUL MARTIN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Caterpillar Tractor Company, Appellee).

*Opinion filed June 1, 1982.*

Scheele, Serkland & Boyle, Ltd., of Chicago (James C. Serkland, of counsel), for appellant.

Robert F. Fahey, of Peoria, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Pursuant to our Rule 302(a) (73 Ill. 2d R. 302(a)), Paul Martin appeals the judgment of the circuit court of Macon County which confirmed the decision of the Industrial Commission reducing the amount awarded by the arbitrator under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*). The arbitrator found that Martin had sustained a work-related injury to his lower back while employed by respondent, Caterpillar Tractor Company, and awarded $2,470.55 for medical expenses, 24 weeks of payments for temporary total incapacity, and 10% permanent disability benefits under section 8(d)(2) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138(8)(d)(2)). The Commission reversed the award for permanent disability, finding that the claimant failed to prove that a permanent disability was sustained as a result of the accident at work. The Commission also reduced the award for medical expenses to $801.40, and reduced the amount of temporary total incapacity payments to 7 3/7 weeks.

The claimant had been employed by Caterpillar as an assembler since March 25, 1974. On December 1, 1975, he was hanging engines in trucks on the assembly line when he was knocked backwards by an unexpected jerk from an air gun and fell from a height of three to four feet, catching his leg in the platform on which he was standing, and landing on his back on the hardwood floor. He immediately felt pain in his lower back, radiating down both legs, and numbness in his feet. He was taken to the first-aid station and then to the physician who treated Caterpillar employees, Dr. Pike. Dr. Pike examined him and prescribed pain medication.

The claimant remained off work until January 20, 1976. During this period he was under the care of Dr. John Wasem, a chiropractor. After his return to work, and between January and July of 1976, claimant testified to

continued pain in his back and legs and numbness in his feet. He continued to visit his employer's first-aid office on a regular basis, to take pain medication, to wear a back brace, and to receive heat treatments and adjustments from Dr. Wasem.

In July 1976 Dr. Pike referred claimant to Dr. C. G. Glenn, a neurologist, and Dr. J. L. Hubbard, an orthopedic physician, for tests at Decatur Memorial Hospital because of a suspected ruptured disc in the lumbar area of the back. The results of the tests, which included a lumbar myelogram, were negative with the exception of a decreased knee reflex in the left knee. Dr. Glenn concluded that though the claimant had sciatic pain there was no evidence of a ruptured disc. Claimant was told to return to work, which he did in August 1976.

Between August 1976 and June 1977, claimant worked at his regular job as an assembler. This involved bending, handling torque wrenches, and lifting objects up to 30 pounds in weight; he testified, however, that he tried to avoid lifting, getting other workers to do it and doing other jobs to make up. He continued to have back and leg pain which seemed to be getting worse. During this period, he testified, he was treated at Caterpillar's first-aid station and by Dr. Pike, receiving heat treatments, ice packs, and pain medication, as often as twice a week.

On October 31, 1977, claimant sought treatment from Dr. Alain Menguy, an orthopedic surgeon at the Carle Clinic in Champaign, due to persistent back and leg pain. Dr. Menguy performed surgery on January 30, 1978, and removed two herniated discs at L-4 and L-5. Claimant was released from the hospital on February 9, 1978, and returned to work in June 1978. He testified that he still has some pain but that his condition has improved since the surgery.

The medical evidence at the arbitration proceeding consisted of the deposition testimony of Dr. Menguy and

Dr. Joseph Schrodt, and the records of claimant's July 1976 hospitalization for tests.

Dr. Schrodt testified that he had examined the claimant on three occasions: on January 25, 1976, some two months after the accident; on April 20, 1976; and on June 6, 1977. Dr. Schrodt stated that he had found no abnormality in the physical examination or X rays of the claimant's back in any of these examinations. His opinion was that through the time of the third examination, in June 1977, there was no evidence that claimant had a ruptured disc. In Dr. Schrodt's opinion, claimant's symptoms were related to the fall at work, and these symptoms were consistent with a herniated disc; but he also stated that he could find no clinical correlation of these symptoms with a ruptured disc.

Dr. Menguy testified that his physical examination of the claimant on October 31, 1977, had suggested the possibility of a herniated lumbar disc. An electromyographic test was then performed at Dr. Menguy's direction. Its results indicated the possibility of S-1 nerve-root involvement. A lumbar myelogram performed on January 5, 1978, suggested the strong possibility of herniation between L-4 and L-5. The surgery followed on January 30, 1978.

In Dr. Menguy's opinion, there was a direct relationship between the accident of December 1975 and his finding two herniated discs in 1978. He based his opinion on the claimant's history and the persistence of symptoms indicative of rupture beginning at the time of the accident. The fall testified to by the claimant was, in his opinion, sufficient to cause a ruptured disc. He agreed, however, that a disc can rupture in the course of normal activities such as bending or stooping. He stated that he was unable to tell precisely when the herniation of claimant's discs had occurred. In his opinion, it probably existed as early as July 1976. In response to a hypothetical question, Dr.

Menguy gave his opinion that a person could continue to work and to engage in normal activities following an injury such as the claimant's, though he would have pain.

The opinions of Dr. Schrodt and Dr. Menguy clearly diverged as to the existence of a herniated disc in the summer of 1976. The focus of their disagreement was the interpretation of the results of the tests conducted by Drs. Glenn and Hubbard in July 1976, in particular the negative myelogram. Dr. Menguy attributed considerable significance to the finding in July 1976 of a decreased left knee reflex, which he described as an "objective" finding (*i.e.*, not subject to influence by the patient or the physician administering the test) strongly suggestive of herniation at L-4 to L-5. Dr. Menguy stated that a negative myelogram did not necessarily mean that a herniated disc was not present, especially where the knee reflex was absent. He stated that he had operated on numerous patients and found ruptured discs though prior to the operation their myelogram results had been negative. Dr. Schrodt attached more significance to the fact that Martin's July 1976 myelogram result had been negative than to the finding of decreased knee reflex. Though he agreed that false negative myelograms (*i.e.*, a negative myelogram result in the presence of a ruptured disc) sometimes occurred, he stated that he had no reason to believe that the July 1976 result was a false negative.

At the arbitration proceedings, the employer introduced two photographs taken by Joseph Penne, the company newspaper editor, on July 4, 1977. They showed the claimant participating in a tug-of-war contest at a Fourth of July celebration at a park in Decatur.

We have often stated that it is the function of the Industrial Commission to determine whether a causal relationship existed between the employment and the claimant's injury, and that its judgment will not be disturbed unless it is contrary to the manifest weight of the

evidence. (*Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 175; *Moore Electric Co. v. Industrial Com.* (1980), 83 Ill. 2d 43, 48; *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 30.) The burden is on the plaintiff seeking an award to prove by a preponderance of credible evidence all the elements of his claim, including the requirement that the injury complained of arose out of and in the course of his employment. *Van Overmeiren v. Industrial Com.* (1981), 84 Ill. 2d 374, 380; *Deere & Co. v. Industrial Com.* (1970), 47 Ill. 2d 144, 148.

The Commission evidently did not accept Dr. Menguy's opinion that there was a causal connection between the claimant's fall at work on December 1, 1975, and the herniated discs for which he had surgery some two years later. It is for the Commission to judge the credibility of witnesses, including expert witnesses (*Moore Electric Co. v. Industrial Com.* (1980), 83 Ill. 2d 43, 47), and where conflicting medical testimony is presented it is for the Commission to determine which testimony is to be accepted. (*Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 175; *Van Overmeiren v. Industrial Com.* (1981), 84 Ill. 2d 374, 379; *McIntire v. Industrial Com.* (1971), 49 Ill. 2d 239, 242.) Dr. Schrodt testified that he found no evidence of a ruptured disc in three examinations of the claimant over a period of 18 months following the accident at work. During this period claimant continued to work at his regular job and to engage in normal activities. The Commission could reasonably have concluded that the herniated disc for which claimant had surgery in January 1978 was not causally related to the earlier injury to his back. We cannot say that the Commission's decision was contrary to the manifest weight of the evidence. *Van Overmeiren v. Industrial Com.* (1981), 84 Ill. 2d 374, 380.

The judgment of the circuit court of Macon County is therefore affirmed.

*Judgment affirmed.*