LOCK 26 CONSTRUCTORS, Appellant, v. THE INDUSTRIAL COMMIS-SION *et al.* (Vernon Politte, Appellee).

Fifth District (Industrial Commission Division)    No. 5—92—0315WC

Opinion filed April 27, 1993.

McCULLOUGH, P.J., specially concurring.

Stevenson, Rusin & Friedman, Ltd., of Chicago (Gregory G. Vacala, of counsel,) for appellant.

John Gitchoff and Ronald S. Motil, both of Granite City, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellee, Vernon Politte (the claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1992)), contending he sustained compensable injuries in the course of and arising out of his employment with the appellant, Lock 26 Constructors (the employer). Following a hearing, the arbitrator determined that the claimant suffered an accident arising out of and in the course of his employment and awarded benefits. The arbitrator further found that the claimant's condition was causally connected to his accident at work. The Industrial Commission (the Commission) affirmed the arbitrator's decision and award. The circuit court confirmed the Commission's decision. The employer brought this appeal, asking us to consider the following

issues: (1) whether the employee was so intoxicated that he could no longer follow his employment and thus could not be said to be engaged in his employment at the time of the occurrence; (2) whether the Commission's finding of causation is contrary to the manifest weight of the evidence; and (3) whether the Commission's award of permanency is contrary to the manifest weight of the evidence.

The claimant was employed as an operating engineer for the employer. On October 21, 1985, the claimant suffered injuries when he fell off of a crane. The claimant had climbed up on the crane in order to fuel a light plant. The claimant testified that his feet slipped on some fuel oil, causing him to fall off the crane and to land partially on a barge and partially on some ties that were sitting on the barge. The claimant felt pain in his arms, the back of his head, and his buttocks. He testified that his whole left side felt numb.

The claimant testified that he had been drinking whiskey on the date of his fall from the crane. He had consumed three or four drinks from the start of his shift until the accident. The claimant approximated his consumption to be 2½ inches of whiskey from a pint bottle. The claimant testified that he did not consider himself to be intoxicated at the time of the occurrence. Jeffrey Tepen, one of the claimant's co-workers, testified that he did not notice alcohol on the claimant's breath prior to the accident, and that the claimant did not appear to be intoxicated.

The claimant testified that he drank a considerable amount of alcohol after the fall. The claimant went to the employer's trailer and had four or five large drinks out of a pint bottle. He believed that this would help relieve his pain. There were no witnesses to the drinking after the accident.

The claimant was taken to Christian Hospital Northeast. Upon arrival at the emergency room, the claimant was told by hospital personnel that he was drunk. The claimant had a blood-alcohol content of 290 milligrams per deciliter (.29). At the hospital, the claimant came under the care of Dr. Hoffman. The claimant underwent tests and physical therapy. The claimant was later referred to DePaul Hospital for physical therapy.

The claimant next came under the care of Dr. John Kenney, an orthopedic specialist. Dr. Kenney first saw the claimant on November 13, 1985. Dr. Kenney found degenerative changes in the claimant's spine but could not state how long those had been present. Dr. Kenney testified that the plaintiff's complaints of pain could have been either cervical or lumbar. Dr. Kenney had the claimant admitted to St. Anthony's Medical Center on January 10, 1986. Dr. Gary Myers

performed an EMG on the claimant that showed mild denervation of the L4-L5 dermatome levels bilaterally, but worse on the left side.

On April 4, 1986, the claimant again saw Dr. Kenney for complaints of pain in his back and neck. Dr. Kenney stated that the claimant was suffering from a herniated disc at L4-L5. Dr. Kenney testified that he initially had the impression that the claimant was suffering from a herniated disc in January 1986. Dr. Kenney advised the claimant that he might require chemonucleolysis for the disc problem in his lower back. However, Dr. Kenney advised the claimant that he should not undergo this procedure until his liver functions were adequate. A lumbar myelogram was performed on June 24, 1986, which showed a small focal anterior epidural impression at L4-L5 which appeared accentuated since a previous myelogram. Dr. Kenney testified that this change was compatible with a herniated disc. Dr. Kenney performed chemonucleolysis on June 26. Dr. Kenney testified that, in his opinion, the claimant's fall at work caused the herniated disc. He did state, though, that his opinion might have been different if he would have been advised of previous injuries involving the same areas of the body. Dr. Kenney testified that the claimant's spinal injuries would prevent him from returning to heavy work.

On July 14, 1986, the claimant was referred to Dr. George Schoedinger for cervical treatment. Dr. Schoedinger testified that a myelogram study performed on January 8, 1986, revealed a disc protrusion at the C5-C6 level. Dr. Schoedinger diagnosed the claimant's injury as herniated nucleus pulposus C4-C5 and C5-C6. Dr. Schoedinger admitted the claimant to St. Anthony's Medical Center on October 20, 1986, where he performed an anterior cervical discectomy and fusion at the C4-C5 and C5-C6 levels. Dr. Schoedinger testified that the claimant's fall at work caused the cervical disc injury, and that the claimant's condition was permanent. Dr. Schoedinger opined that it would be unwise for the claimant to perform any heavy manual labor.

The claimant was examined at the employer's request by Dr. Michael Ralph on July 12, 1988. Dr. Ralph reviewed the claimant's medical records and performed a physical examination that lasted five minutes. In Dr. Ralph's opinion, the claimant's lumbar myelogram was normal for a person his age, and the cervical myelogram showed only degenerative changes without impingement on the nerve roots. Dr. Ralph testified that, logically, the treatments rendered by Dr. Kenney and Dr. Schoedinger were not medically necessary as a result of the claimant's fall. Dr. Ralph further testified

that the claimant's blood-alcohol level of .29 was an oppressive level, and that a level of that magnitude would impair judgment and make a person combative.

The claimant suffered a previous injury in 1983 when he fell on ice-covered steps outside of the operators' trailer. The claimant suffered a fractured right arm and cervical strain. The claimant settled a workers' compensation claim in the amount of 10% permanent disability of the right hand and 2½% of the man as a whole. The employee returned to work in 1988 for Sandau Custom Dredging. In July 1988, the claimant suffered an injury to his left knee and left hand. A workers' compensation claim was filed for those injuries, and, at the time of arbitration, the claimant was still off of work.

The arbitrator found that on October 21, 1985, the claimant had suffered an accidental injury arising out of and in the course of his employment. The arbitrator found that there was no evidence that a blood-alcohol level of .29 would render the claimant unable to carry out his job duties. The arbitrator found persuasive the claimant's testimony that he drank a considerable amount after the accident. The arbitrator awarded the claimant temporary compensation benefits in the amount of 103¹/₇ weeks, $19,176.49 in medical bills, and 40% permanent partial disability of the man as a whole. The Commission affirmed the arbitrator's decision. On administrative review, the circuit court confirmed the Commission's decision.

■ As an initial matter, the employer has filed a motion to strike the statement of facts from the claimant's brief. This motion was taken with the case. The employer points out that the claimant has included argumentative and conclusional statements in his statement of facts. Further, the claimant has left out citations to the record for a few of his statements. The claimant's response to this motion was stricken as untimely. Our review of the record indicates that the violations of Supreme Court Rule 341 (134 Ill. 2d R. 341) are relatively minor. A statement of facts will not be stricken when there are no rules violations so flagrant as to hinder or preclude review (*Oakleaf v. Oakleaf & Associates, Inc.* (1988), 173 Ill. App. 3d 637, 527 N.E.2d 926), and a reviewing court disregards inappropriate statements contained in either brief. (*Black v. Iovino* (1991), 219 Ill. App. 3d 378, 580 N.E.2d 139.) Therefore, we will not strike the claimant's statement of facts but will disregard any inappropriate statements. Nevertheless, we strongly recommend that attorneys always strictly comply with the Illinois Supreme Court Rules.

■ The employer's first argument on appeal is that the claimant was so intoxicated that he could no longer follow his employment and thus could not be said to be engaged in his employment at the time of the occurrence. The employer's argument is based on the supreme court's decision in *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033, wherein it was held that compensation should be denied as a matter of law when an injury arises out of a claimant's intoxicated condition. The claimant in *Paganelis* had a blood-alcohol level of .238. The claimant responds that there was no evidence that he could not perform his job duties at the time of the occurrence, and he points out that the employer was unable to rebut his testimony that he drank a considerable amount after the accident.

We believe that the employer has misread *Paganelis*. The employer seems to suggest that because the claimant had a blood-alcohol level higher than the claimant in *Paganelis*, these injuries must have necessarily resulted from his intoxicated condition. However, the supreme court did not create a *per se* level of intoxication in *Paganelis*. The court held that the Commission's finding that the accident arose out of the claimant's intoxicated condition was not against the manifest weight of the evidence. The court chose to follow Professor Larson's opinion of when intoxication removes a claimant from the scope of employment. Professor Larson has stated the rule as follows:

> "Voluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment. Otherwise, apart from special statute, evidence of intoxication at the time of injury is ordinarily no defense, at least unless intoxication was the sole cause of injury." (1A A. Larson, Workmen's Compensation §34.00, at 6-71 (1992).)

The *Paganelis* court explained that the defense of intoxication could succeed if the employer could show either that the intoxication was the sole cause of the injury or that the intoxication was so excessive as to constitute a departure from the course of his employment. The court in that case found it significant that the claimant was unable to show that he was able to perform his work after he became intoxicated.

■ Unlike the claimant in *Paganelis*, this claimant introduced evidence that he was able to perform his work after consuming alcohol. The claimant was specifically performing a job task when he slipped on some oil and fell. Because the claimant slipped in oil and fell off of a crane, it clearly could not be said that intoxication was

the sole cause of injury. Further, as the evidence indicated that the claimant was successfully performing his job at the time of injury, it could not be said that he had departed from the course of employment. Professor Larson has explained that, "if the claimant continues actively to perform his duties, even while admittedly intoxicated, he has not abandoned his employment." (1A A. Larson, Workmen's Compensation §34.21, at 6-95 (1992).) The employer was unable to introduce any evidence that the claimant's intoxication was the cause of injury and only speculates from the blood-alcohol level that that was the case. Additionally, the claimant's testimony that he drank a considerable amount after the fall to relieve his pain went unrefuted. The Commission's decision on this matter was not against the manifest weight of the evidence.

■ The employer's next argument is that the Commission's finding that the claimant's condition was causally connected to his alleged accident is against the manifest weight of the evidence. The employer argues that the claimant's testimony is not worthy of belief because he gave three different versions of what height he fell from. The employer also believes that the testimony of Dr. Ralph should be believed over that of the claimant's treating physicians, Dr. Schoedinger, Dr. Kenney, and Dr. Hoffman. The claimant responds that the Commission's decision as to causation was clearly not against the manifest weight of the evidence, and any other conclusion as to causation is sheer speculation on the part of the employer.

Resolving disputes in the evidence and drawing reasonable inferences and conclusions therefrom is the responsibility of the Commission. (*Riley v. Industrial Comm'n* (1991), 212 Ill. App. 3d 62, 570 N.E.2d 887.) In the presence of conflicting medical opinions, the Commission's determination is given substantial deference and will be upheld unless it is contrary to the manifest weight of the evidence. *General Tire & Rubber Co. v. Industrial Comm'n* (1991), 221 Ill. App. 3d 641, 582 N.E.2d 744.

The claimant's treating physicians all testified to causal connection. The employer wants this court to reverse based on the testimony of Dr. Ralph, who examined the claimant for all of five minutes. The employer made vague references to other injuries but did not introduce any concrete evidence that those injuries could have been the cause of the claimant's condition. The Commission's decision to rely on the testimony of the claimant's treating physicians was clearly not against the manifest weight of the evidence.

■ The employer's final argument is that the award of 40% loss of the man as a whole, pursuant to section 8(d)(2) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)), was against the manifest weight of the evidence. The arbitrator found that the claimant was disabled to the extent of 15% lumbar and 25% cervical. The employer notes that the claimant has returned to gainful employment and is able to drive a truck for distances exceeding 100 miles. The employer also points out that the claimant is no longer treating for, nor taking medication for, the injuries sustained on October 21, 1985. The employer cites decisions of the Commission awarding 25% to 30% for allegedly similar injuries. The claimant responds with the testimony of the doctors that he could no longer engage in heavy manual labor. The claimant further relies on the testimony of Dr. Schoedinger that he will have intermittent discomfort in his neck and arms in the future and will require medication for that discomfort. The claimant also cites Commission decisions awarding 40% to 50% for allegedly similar injuries.

The determination of the extent or permanency of a claimant's disability is a question of fact for the Commission, whose decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*Amoco Oil Co. v. Industrial Comm'n* (1991), 218 Ill. App. 3d 737, 578 N.E.2d 1043.) The award in this case was supported by the medical testimony that the employer should refrain from heavy manual labor and the claimant's testimony that he could no longer do some of the everyday chores around the home that he used to do and that he experiences pain when traveling long distances in vehicles. The employer has not made a sufficient showing to indicate that the award was against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:
I agree with the decision reached. As is pointed out, the claimant is not entitled to recover if the intoxication was the cause of the injury or the intoxication was so excessive as to constitute a departure from the course of employment.

The arbitrator found uncontradicted the testimony of claimant "that he drank a lot between the time he was injured and the time he was taken off the barge to the hospital." There was no evidence the claimant was drunk at the time of the injury even though the evidence shows at the hospital his blood-alcohol level was an oppressive .29.

Had there been evidence his level of intoxication was .29 at the time of the accident, I would find his intoxication was so excessive as to constitute a departure from his course of employment, where the only witness to the incident was the claimant himself.