ROSEMARY PARRO, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Verros Restaurant, Appellee).

First District (Industrial Commission Division)   No. 1—92—3132WC

Opinion filed July 16, 1993.

RAKOWSKI, J., joined by RARICK, J., dissenting.

Katherine A. Ward, of Ambrose & Cushing, P.C., of Chicago, for appellant.

Daniel T. Crowe, of Regas, Frezados & Harp, of Chicago, for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

The petitioner, Rosemary Parro, brought a workers' compensation claim against the respondent, Verros Restaurant, for accidental injuries sustained on May 15, 1990. The arbitrator denied the petitioner's claim, finding that her injuries did not occur in the course of her employment. On review, the Illinois Industrial Commission

(Commission) affirmed the arbitrator's decision, and the circuit court confirmed the Commission's decision. The petitioner appeals. We affirm.

The record shows the petitioner was employed by the respondent as a bartender for approximately four years. On May 15, 1990, the petitioner worked from 10 a.m. until closing at 7:30 p.m. She opened the bar, checked alcohol inventory, prepared fruit for the drinks, washed glasses, and kept the bar clean. Throughout the day, she mixed drinks for the bar and provided drinks for eight waitresses from the restaurant. She also calculated cash sales, tabulated ticket sales to the waitresses, and operated the credit card machine and cash register. In addition, she went to the basement to check supplies. Also, on most days, the petitioner would go to the basement to hide the daily cash receipts.

The evening of May 15, 1990, George Dykes and Duane St. Pierre came into the bar. Dykes announced that he was going to be a father. As a result, a round of drinks was served. The petitioner said she only took two sips of beer.

Shortly thereafter, the petitioner closed the bar by cleaning the glasses, clearing the cash register, and totaling the American Express receipts. She gave the receipts to a busboy, who hid them in the basement. The petitioner then got ready to go home by putting on her ankle-length raincoat and changing from a 1-inch rubber-soled shoe to a $1^1/_2$-inch high-heeled pump. Before leaving, she decided to use the restroom in the basement. The stairway was described as steep, dark, greasy, and dirty. She testified that as she began to descend the stairs, "I hit that first step and that was it." Later, she was asked, "When you hit that step and you say your heel slipped, what did it slip on?" The petitioner responded, "My coat." Finally, she was asked, "So your right foot never did make contact with the first step?" She responded, "I had to grab on the rail when I go down those stairs."

St. Pierre heard the fall and went immediately to her side at the bottom of the stairs. He testified the petitioner did not smell of alcohol.

The petitioner was taken by ambulance to Northwestern Memorial Hospital. She suffered multiple head and face lacerations, multiple rib fractures, and right pulmonary contusions. Her medical bills for treatment totaled $75,152.25.

Dr. James A. Wolf testified he treated the petitioner. According to her medical records, a blood test revealed the petitioner had a blood-alcohol level of .288. In treating her, Dr. Wolf also relied on a resident's note of "intoxicated white female." However, the actual

print of the blood test was not available to Wolf, and he admitted that he did not participate in the test. Wolf opined that some persons may have a rather high blood-alcohol level and still be capable of performing a bartender's duties.

Four patrons of the bar testified concerning their observations of the petitioner for the few hours preceding the accident.

Circuit Judge Albert Green was present for one-half hour. He spoke to the petitioner and did not observe anything about her behavior that would indicate she was intoxicated. He said she had no problem performing her duties. He did not observe her drinking. Judge Green left about one hour before closing.

Terry McLeran, Duane St. Pierre, and George Dykes testified they visited with the petitioner while sitting at the bar. They also observed her serving drinks, making change, keeping the bar clean, and closing the bar. Each of these witnesses believed she was not intoxicated prior to the accident.

Dr. Scott Kale testified for the respondent as a blood-alcohol expert. He reviewed the records and determined the petitioner's blood-alcohol level at 9:12 p.m. on the date of the occurrence was .288. He also testified that a person with a .288 blood-alcohol level would not have a normal capacity to respond cognitively or physically to her environment. That person would be lethargic, drowsy, inattentive, clumsy, stumbling, and have abnormal motor skills. In order for the petitioner to have reached a level of .288, she would have had to have been drinking during the day. Additionally, because the blood test was taken more than one hour after the petitioner's fall, he estimated that her blood-alcohol level at the time of the fall could have been as high as .408. Dr. Kale stated that in his opinion the petitioner's fall was caused by her intoxication.

Finally, the petitioner's history given at Northwestern Memorial Hospital indicates she had a past history of alcohol abuse and had been drinking during the week prior to her admission. The petitioner, however, testified she could not remember the last time before the accident that she had a drink.

On appeal, the petitioner first argues the Commission erred in finding she did not sustain her injuries within the course of her employment. Specifically she argues she was not intoxicated. Next, she argues that even if she was intoxicated, she was not so intoxicated that she could not perform her job.

The burden is on the petitioner seeking an award to prove by a preponderance of credible evidence all the elements of her claim, including the requirement that the injury complained of arose out of and in the course of her employment. *Van Overmeiren v. Industrial*

*Comm'n* (1981), 84 Ill. 2d 374, 418 N.E.2d 714; *Deere & Co. v. Industrial Comm'n* (1970), 47 Ill. 2d 144, 265 N.E.2d 129.

■ Intoxication is not a *per se* bar to workers' compensation. (*Riley v. Industrial Comm'n* (1991), 212 Ill. App. 3d 62, 570 N.E.2d 887.) For compensation to be denied on the basis of intoxication, the evidence must show the petitioner was so intoxicated the court can say as a matter of law that the injury arose out of her drunken condition and not out of her employment. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033; *Riley v. Industrial Comm'n* (1991), 212 Ill. App. 3d 62, 570 N.E.2d 887.) However, intoxication which does not incapacitate the petitioner from following her occupation is not sufficient to defeat the recovery of compensation, even though the intoxication may be a contributing cause of her injury. *District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544, 404 N.E.2d 787.

Factual findings by the Commission are given substantial deference and will not be overturned unless they are against the manifest weight of the evidence. (*Riley v. Industrial Comm'n* (1991), 212 Ill. App. 3d 62, 570 N.E.2d 887.) It is within the province of the Commission to judge the credibility of witnesses, to draw reasonable inferences from their testimony and to determine what weight their testimony is to be given. *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033.

On review, this court will not reject reasonable inferences of the Commission merely because we might have drawn a contrary inference on the particular facts. *International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 442 N.E.2d 908; *Owens-Illinois Glass Co. v. Industrial Comm'n* (1968), 39 Ill. 2d 312, 235 N.E.2d 611.

■ In the instant case, the petitioner supports her argument that she was not intoxicated by noting the uncontradicted testimony given by the patrons of the bar. These patrons all believed that the petitioner was not intoxicated when they spoke with her prior to the fall. However, Judge Green was only there a half hour and left approximately one hour prior to closing. Dykes, St. Pierre, and McLeran were all friends of the petitioner. Accordingly, the Commission could have reasonably inferred that her friends' testimony was biased.

Also, there was unrebutted medical testimony from Dr. Wolf and Dr. Kale that the petitioner was intoxicated. In treating the petitioner, Dr. Wolf relied on the result of the blood test as well as the resident's notes describing an "intoxicated white female." Dr. Kale testified that in order for the petitioner to have reached a blood-

alcohol level of .288, she would have had to have been drinking during the day. He also stated the petitioner's blood-alcohol level could have been as high as .408 at the time of the fall.

The petitioner testified that she only had two sips of beer during the day. She further testified she could not remember the last time she drank before May 15, 1990. However, her medical records show a history of alcohol abuse as well as heavy drinking the week prior to the accident. The petitioner's testimony was also rebutted by the blood-alcohol test results. The Commission clearly found that her testimony was *not* credible.

Further, we find the petitioner's testimony is ambiguous as to whether or not she slipped before the first step or slipped on the first step itself. It was within the Commission's discretion to conclude she was so intoxicated that she fell before making contact with the step.

We also find unpersuasive the petitioner's argument she was not so intoxicated that she could not perform her job. Even though the witnesses testified that the petitioner was able to perform her job at the bar, she was not able to descend the stairs. Also, none of the witnesses ever observed her descend the stairs on the day in question. The petitioner argues this is irrelevant since the daily cash receipts were already stored. However, descending the stairs was still a duty the petitioner was expected to perform, whether it was for depositing receipts and checking supplies or for using the restroom. See *Hunter Packing Co. v. Industrial Comm'n* (1953), 1 Ill. 2d 99, 115 N.E.2d 236.

Finally, we note that our recent decision in *Lock 26 Constructors v. Industrial Comm'n* (1993), 243 Ill. App. 3d 882, 612 N.E.2d 989, is distinguishable and does not require a contrary result. In that case the petitioner was awarded workers' compensation for a fall despite having a blood-alcohol level of .29. In *Lock 26*, the findings and conclusions of the Commission are clearly distinguishable from the situation here.

First, the petitioner in *Lock 26* testified that he drank after the fall. The Commission found this testimony credible. In the instant case, the petitioner could not have been drinking after the fall since she was unconscious. Further, in the case at hand, the Commission expressly found the petitioner's testimony was *not* credible.

Moreover, in *Lock 26* the Commission found that even with a blood-alcohol level of .29, the petitioner could still perform his work. Here, the Commission found the petitioner was unable to perform that portion of her job which called for her to descend the stairs.

Finally, in *Lock 26* the Commission affirmed the arbitrator's award to the petitioner. On appeal, in *Lock 26*, the burden was on the respondent to prove the Commission's ruling was against the

manifest weight of the evidence. Here, the Commission found against the petitioner. Therefore, in the case at hand, the petitioner must prove the Commission's finding was against the manifest weight of the evidence.

Following our review of the record, we determine the evidence supports the Commission's finding that the injury was the result of the petitioner's intoxication and was not within the scope of her employment. Accordingly, we hold the Commission's findings were not against the manifest weight of the evidence.

Accordingly, we affirm the decision of the circuit court of Cook County.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, J., concur.

JUSTICE RAKOWSKI, dissenting:

For the following reasons I would reverse the decision of the circuit court.

> "In 36 States, intoxication is a separate statutory defense to a workers' compensation claim, and statutes in three other States provide for a reduction in compensation benefits in the case of intoxication; the statutes describe in varying terms the causal relationship between intoxication and injury that will defeat a claim or reduce an award. (See 1A A. Larson, The Law of Workmen's Compensation § 34.31, at 6—89 through 6—92 (1985).) Unlike the majority of States, Illinois has no statute specifically recognizing intoxication as a defense to a workers' compensation claim or as grounds for a reduction in workers' compensation benefits." *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 481, 548 N.E.2d 1033.

According to Professor Larson:

> "Voluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment. Otherwise, apart from special statute, evidence of intoxication at the time of injury is ordinarily no defense, at least unless intoxication was the sole cause of injury." 1A A. Larson, Workmen's Compensation § 34.00, at 6—64 (1985).

In accordance with the above, Illinois has fashioned the following test:

> "In order for compensation to be denied on the basis that an employee was intoxicated, 'the employee must be so intoxicated, as shown by the evidence, that the court can say as a matter of law, that the injury arose out of his drunken condition and not

out of his employment. [Citations.] Whenever an employee is so drunk and helpless that he can no longer follow his employment he cannot be said to be engaged in his employment, and when injured in that condition his injury does not arise out of his employment. But intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury. Our statute was not designed to make contributory negligence of the employee, or a defense of that nature, a bar to his recovery under the Workmen's Compensation [A]ct, where, as in this case, his injury arose out of and in the course of his employment. [Citation.]' " *District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544, 557-58, 404 N.E.2d 787, quoting *Hahnemann Hospital v. Industrial Board* (1918), 282 Ill. 316, 327.

In applying the above law to the facts *sub judice*, I can understand how one could come to the conclusion that the claimant was intoxicated. I cannot, however, conclude *as a matter of law* that she was so intoxicated that she was incapacitated from following her occupation.

All occurrence witnesses testified to the contrary. They all said that claimant was serving drinks, making change, keeping the bar clean and closing the bar. While Dr. Wolf and Dr. Kale said that, according to the blood test, claimant was intoxicated, neither said she was incapable of doing her work. Dr. Wolf specifically stated that some persons may have a rather high blood-alcohol level and still be capable of performing a bartender's duties.

The only testimony supporting the employer's position came from Dr. Kale, who stated that in his opinion the petitioner's fall was caused by her intoxication. In my view, such testimony from a doctor who did not see the claimant performing her job, did not see the stairs in question, did not see the shoes or dress the claimant was wearing, and who only relied on a blood-alcohol level is far from the "as a matter of law" standard required by Illinois case law.

I would also point out that in many of the cases where benefits have been denied, the claimant was driving a motor vehicle with a blood-alcohol level in excess of 0.10%. In such a situation, public policy strongly militates against an award. Justice Ryan suggests that a different standard apply in that type of case. See *Paganelis*, 132 Ill. 2d at 487 (Ryan, J., concurring).

Nor do I agree with the method used by the majority to distinguish *Lock 26 Constructors v. Industrial Comm'n* (1993), 243 Ill. App. 3d 882, 612 N.E.2d 989.

The *Lock 26 Constructors* majority held that because the claimant

introduced evidence that he was able to perform his work after consuming alcohol, it could not be said as a matter of law that intoxication was the sole cause of the injury. It was only Justice McCullough in his specially concurring opinion that based his decision on the drinking-after-the-accident evidence. While Justice McCullough's argument that a 0.29% blood-alcohol level should, in itself, preclude recovery may have some appeal, I suggest that such a decision should come from the legislature and not from the judiciary.

If anything, *Lock 26 Constructors* is support for the claimant's position. It distinguishes *Paganelis* by pointing out that there the record did not contain any evidence that claimant was able to perform his work after he became intoxicated. (See *Paganelis*, 132 Ill. 2d at 485.) In the case *sub judice*, we have the opposite; there is no evidence other than her tripping on the stairs that she could not perform her job. I respectfully submit that the majority opinion confuses the concept of intoxication with a situation where it can be said, *as a matter of law*, that an employee is so drunk and helpless that he can no longer follow his employment.

Again, like the specially concurring opinion in *Lock 26 Constructors*, such a rule may have appeal. I suggest, however, that the change should come from the legislature as it has in at least 39 other States and not from the court.

RARICK, J., concurs in dissent.