GENERAL TELEPHONE COMPANY OF ILLINOIS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Bobby Boyt, Appellee).

Fifth District (Industrial Commission Division)   No. 5—87—0358WC

Opinion filed March 24, 1988.

Edward M. Vokoun, of Evans & Dixon, of St. Louis, Missouri, for appellant.

Harris, Lambert & Wilson, of Marion, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent appeals from an order of the circuit court which reversed an Industrial Commission (Commission) order finding claimant failed to prove his condition of ill-being was causally related to the alleged incident producing the disability. We reverse.

Claimant, a 41-year-old sales representative who designed and wrote orders for new service, testified that on August 31, 1986, while parked at the office, he felt a sharp pain in his lower back while getting out of his car. Employed as a sales representative for 16 years, claimant's work required extensive automobile travel with four to seven daily appointments.

Claimant testified he went to Dr. Ravingdranathan the next day who administered an ultrasonic treatment and prescribed alternating hot and cold packs.

In December 1978 claimant went to Dr. Brundick claiming he continued to have sharp pains which radiated into his legs. Brundick took X rays and a laminograph, prescribed aspirin, a back brace, and exercises, but offered no other treatment to claimant. Claimant also saw a company doctor, an orthopedic surgeon, a neurologist, and a chiropractor on various occasions. Claimant testified he continues to have constant back pain and at times has trouble walking. He cannot play basketball nor can he run. He admitted, however, he has worked continuously since the alleged accident, although he missed 7 to 10 days work because of his back condition during the subsequent 3½ years. Claimant maintained he had no back problem prior to August 31, 1978.

On cross-examination claimant disputed Dr. Ravingdranathan's records which indicated claimant did not visit the doctor until September 5, 1978. Claimant also denied telling Dr. Brundick the pain in his back began one year before his visit in December 1978. Claimant admitted he might have told Brundick he thought the pain arose because he rode in a car too much. Claimant has never been hospitalized for his condition and, with the exception of an injection given him by one of the doctors and chiropractic manipulations, he has had no other treatment for his condition. He has worked continuously, plays golf once a week, and participates in a church softball league during the summer, playing every position.

The testimony of Dr. Brundick was admitted by deposition. Brundick saw claimant on December 4, 1978. At that time claimant offered a history of pain in the lower back originating approximately one year earlier. Onset of pain was gradual and claimant attributed it to riding around in his automobile. Brundick stated claimant did not tell him

about any relationship between his pain and his employment nor did he describe any event occurring in August 1978 or offer any history of an injury to his back while alighting from an automobile.

An X ray revealed a defect in that portion of the L5 vertebra which interlocked with the first vertebra of the sacrum. This defect permitted forward and backward displacement of the spinal column. Brundick also diagnosed a number of other abnormalities which did not relate directly to claimant's back condition, including the fact claimant's left leg was shorter than his right, and his left calf and thigh were smaller in circumference than their counterparts. An EMG test also revealed abnormalities in the muscles of the thigh and shin.

Brundick recommended claimant undertake exercise and "wait this out." He had no opinion as to the cause of the condition although there were various theories for it within the medical profession. One possibility was congenital defect. Another theory suggested a prior acute injury could cause the gradual development of the condition. Brundick had no indication from claimant and no opinion that his employment had any relationship to his back condition, although Brundick was of the opinion riding in a car for long periods could aggravate, but not cause, the condition. Back pain in middle-aged people from riding in a car was not unusual and occurred as part of the aging process. Brundick was also of the opinion claimant was not prohibited from pursuing all activities requiring stooping, bending, or lifting. Only repetitive stress of this sort was to be avoided.

The records from Dr. Ravingdranathan confirmed claimant's first visit was on September 5, 1978, in contrast to claimant's testimony he saw the doctor the day after the pain appeared. The doctor diagnosed lumbar sacral strain. An X ray was negative.

Dr. Alan Morris examined claimant in 1981. Claimant related a history of acute pain on August 31, 1978, with no significant degree of prior back pain before that incident. At the time of Morris' examination claimant had no pain and no clinical findings which would suggest pain. There was no active nerve involvement or impairment. Morris' examination otherwise confirmed the anatomical findings of Dr. Brundick.

In Morris' opinion the condition was congenital and not caused by trauma. Morris also opined claimant was able to work with no limitation and did not suffer from permanent partial disability. Finally, Morris was of the opinion getting out of a car did not aggravate claimant's congenital defect.

The arbitrator denied benefits, finding claimant failed to establish a causal connection between his condition and employment. The Com-

mission affirmed but was reversed by the circuit court. On further review, the Commission, pursuant to the directions issued it, awarded benefits for 2½% permanent partial disability and medicals. The second decision of the Commission was confirmed by the circuit court.

Respondent argues the trial court, in its original review, improperly weighed the evidence in reversing the Commission when its role was limited to determining whether the Commission's decision was against the manifest weight of the evidence. We agree.

■■ In resolving the inconsistency in claimant's testimony and Dr. Brundick's recollection of the history given him by claimant as to prior back pain, the trial court admitted the inconsistency existed but concluded it was likely the busy doctor simply missed the critical bit of history to the effect the claimant injured his back getting out of a car. In *Owens-Illinois Glass Co. v. Industrial Comm'n* (1968), 39 Ill. 2d 312, 316, 235 N.E.2d 611, 613, the supreme court stated:

> "We have repeatedly stated that we will not substitute our judgment on factual questions for that of the Commission [citation]; that it is the function of the Commission to determine the facts and to draw reasonable inferences and conclusions from the evidence and that the function of this court is limited to a determination of whether the Commission's findings are against the manifest weight of the evidence [citations]; that determination of disputed questions of fact, including the nature and extent of the disability as well as the matter of causal connection, is primarily a function of the Commission [citation]; and that where the evidence is conflicting, or of such a nature that different inferences may be reasonably drawn therefrom, we will not discard permissible inferences drawn by the Commission merely because it or we might have drawn other inferences from the facts."

In this case, the trial court discounted the inconsistencies in the testimony simply because, in the trial court's mind, they made no sense. This was an issue for the Commission to resolve.

Respondent also points out that although Dr. Brundick did state an opinion to the effect riding in an automobile might cause back pain, claimant did not testify his back pain came from riding in a car. He testified it occurred as a result of a specific incident: getting out of a car. Brundick had no opinion as to whether this could have aggravated claimant's back condition, and Dr. Morris, to the contrary, was of the express opinion this could not have affected the congenital defect.

Respondent also argues claimant failed to establish he suffered an accident or that it was disabling. Although claimant was seen by a number of doctors, he received no extensive treatment and has contin-

ued to work on a full-time basis. Although claimant testified his condition caused him to miss 7 to 10 days of work, five of those absences occurred more than two years after the alleged incident and the other dates were not documented. Furthermore, although claimant testified to periodic difficulties in bending, lifting, and climbing, Dr. Brundick was of the opinion claimant could perform these tasks as long as he did not engage in repetitive activities of this sort, and Dr. Morris found no evidence of any physical pain or difficulty in movement during his 1981 examination. Finally, although claimant maintains he can no longer play basketball or run, he acknowledged playing golf at least once a week and active participation on a softball team.

■ Claimant argues, however, under the authority of *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026, he established the existence of a repetitive trauma injury by virtue of the fact he is required to drive as part of his sales job. Respondent counters that claimant never testified riding in a car injured his back. To the contrary, claimant testified before the arbitrator he had no back pain prior to the August 31, 1978, alleged incident. We conclude claimant is not entitled to raise a repetitive trauma theory at this point in the review process. This case was tried as a specific injury claim. Claimant may not attempt to inject a new theory into the case after having received an adverse ruling predicated on a different theory of liability. Claims ostensibly based on a theory of repetitive trauma necessarily require proof of different facts to establish the injury. In order to rely on this theory, claimant must present it, in the first instance, before the arbitrator. Were it otherwise, respondent would have no opportunity to fashion an appropriate defense.

■ For the foregoing reasons, we conclude the circuit court's first order reversing the Commission cannot stand. The finding of no causal connection between the condition of ill-being and the alleged incident producing the disability is supported by the medical testimony in addition to the lack of significant objective evidence of an injury. The trial court is not permitted to reweigh the evidence simply because it would have drawn inferences other than those of the Commission.

Accordingly, the judgment of the circuit court of Williamson County is reversed and the original order of the Commission denying benefits is ordered reinstated.

Circuit court reversed; Commission order reinstated.

BARRY, P.J., and McNAMARA, WOODWARD, and CALVO, JJ., concur.