(No. 56290.—)

GILES R. LYONS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Greyhound Lines, Inc., Appellee).

*Opinion filed May 18, 1983.*

Rooks, Pitts, Fullagar & Poust, of Chicago (Douglas F. Stevenson and John J. O'Leary, of counsel), for appellant.

Brody, Gore & Fineberg, Ltd., of Chicago (Nehemais Terry, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal from a ruling of the circuit court of Cook County confirming the Industrial Commission's decision that Giles Lyons had suffered no accident. The issues on appeal are whether that judgment is against the manifest weight of the evidence; whether proper notice of an accident was given, and whether Lyons is permanently and totally disabled.

Lyons was a bus driver for Greyhound Lines for 33 years. In 1961 he had suffered a mild back injury for which he received a back brace, but he wore this only occasionally in response to pain and could recall no instance of such pain more recent than "a year, *** about two years" prior to the incident which is the subject of this case. On September 4, 1978, Lyons was driving a bus from Minneapolis to Chicago and stopped at Eau Claire, Wisconsin, to load some boxes onto his bus from another bus. He claimed that he felt a sharp twinge in his back as he was doing so, but there were no witnesses to corroborate this. He resumed driving and stopped at Greyhound terminals in Madison and Chicago, but did not inform any Greyhound personnel of any accident or any incident of lifting that day. He reported for work for several days but kept experiencing pain in his back and legs, and on September 11, which was to be one

of his days off, he consulted Dr. U. Feldman. Dr. Feldman treated him conservatively but kept him off work, and on September 27, 1978, he visited Dr. H. William Schmidt, who hospitalized him. A myelogram revealed signs of an "accute disc problem" [*sic*], as Dr. Schmidt phrased it in a letter to Lyons' attorney dated November 7, 1979. An operation to remove a ruptured disc at L-4 was performed on October 10 or 11, 1978. Lyons' pain alleviated somewhat after that, although he continued to feel weak in his right leg.

Lyons did not return to work. He received follow-up care at Dr. Schmidt's office following his surgery and was examined by Dr. Ben Camacho on September 10, 1979, at Greyhound's request. In his report Dr. Camacho concurred with Dr. Schmidt that Lyons was disabled from his occupation as a bus driver but noted that "the man had a previous low back injury with right leg involvement and it is conceivable that the low back problem with right leg radiculitis has been a long-standing affair," recommending payment of benefits "if it can be shown that the surgery done was due to the [lifting] episode in question." Dr. Feldman indicated on a form sent by Greyhound and completed on September 28, 1978, that Lyons' injury arose out of the employment. Dr. Schmidt, in his 1979 letter, expressed the opinion that "lifting the luggage September 4, 1978, accutely [*sic*] reinjured or aggravated his back condition."

An arbitrator for the Industrial Commission found that Lyons' injuries arose out of and in the course of the employment but that Lyons had failed to give timely notice of an accident, and denied compensation. On review, the Industrial Commission found that timely notice had been given but that no accident had occurred. The circuit court confirmed this finding.

It is the province of the Industrial Commission to resolve conflicting testimony, including medical testimony,

and draw inferences from the evidence. (*Walden v. Industrial Com.* (1983), 93 Ill. 2d 527; *Keystone Steel & Wire Co. v. Industrial Com.* (1978), 72 Ill. 2d 474.) Its determinations will not be set aside if there is credible evidence in the record that supports them. (*Benson v. Industrial Com.* (1982), 91 Ill. 2d 445.) In this case the Industrial Commission could have concluded, on the basis of Dr. Camacho's report, that Lyons' discomfort was caused by a degenerative condition in his back which may have been the result of prolonged stress on his body not related to his 1961 injury, rather than by a lifting incident which occurred on September 4, 1978. This view is supported by the fact that Lyons had had occasional episodes of pain as recently as 1976 and that he told no one of his "accident" for several days after it occurred, even when he asked Greyhound to replace him with another driver because he was having back pain. There were no witnesses on the scene, and Lyons admitted on cross-examination that he told neither Dr. Feldman nor Dr. Schmidt of an accident. While Dr. Schmidt noted on November 7, 1979, that a lifting episode had exacerbated a preexisting back ailment, Lyons stated in a letter to the Greyhound claims department dated February 3, 1979, that "after surgery [October 1978, slightly more than a month after the alleged incident occurred], Dr. Schmidt affirmed that it took a long time for the disc and nerves to get into the state they were in at time of surgery." Lyons himself was not entirely consistent in advancing the theory that he had suffered an accident while lifting boxes of fish: he stated in September 1979 on a form requesting sick leave benefits that he was "driving" at the time of the injury, not that he was "lifting," and on the same form he left blank the spaces which asked if an "accident" had occurred at work. Only later did he decide to seek a workers' compensation remedy.

Lyons argues that no significance should be attached to his omissions on the form requesting sick leave benefits, for "driving" should be interpreted as a general reference to his work and "accident," in the context of a bus driver's work, can be reasonably understood by applicants as referring only to collisions between vehicles rather than as being a legal term of art with broader definition. He points out that this court has refused to hold claimants responsible for their misunderstanding of the legal meaning of "accident" where there were no witnesses to the alleged incident but no other explanation for their discomfort could be inferred from the record. (*Jacobson v. Industrial Com.* (1981), 84 Ill. 2d 153; see also *Sohio Pipe Line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32.) He contends that this court having reversed the Industrial Commission's decision that no accident had occurred in *Jacobson*, it would be anomalous not to do so here.

We do not agree. In *Jacobson* there were affirmative indications in the record that the alleged accident occurred as the claimant said it had, and this court said "no other reasonable explanation has been offered or is readily inferable as to how the claimant was injured." (84 Ill. 2d 153, 156.) In this case, by contrast, there is no direct evidence of a lifting injury aside from Lyons' own assertions that one occurred, and there is undisputed evidence of a preexisting physical condition which may not have been work related and which may have culminated in a herniated disc. A claimant bears the burden of establishing that his injuries arose out of and in the course of the work (*Newgard v. Industrial Com.* (1974), 58 Ill. 2d 164) and that it was attributable to a "specific time, place and cause" rather than to the effects of prolonged stress on his body (*Lambert v. Industrial Com.* (1980), 79 Ill. 2d 243, 247; see *International Harvester Co. v.*

*Industrial Com.* (1973), 56 Ill. 2d 84). The Industrial Commission could have determined, on the evidence in this record, that Lyons did not meet this burden.

It is possible that we have here the case of a loyal and dedicated employee who did suffer an accident in the course of his employment but, instead of complaining about it promptly, went on working as long as he could. We are not, however, the fact finder, and so long as the Industrial Commission's decision cannot be viewed as being against the manifest weight of the evidence, we are required to uphold that decision. In this case we cannot conclude that the Industrial Commission's determination was contrary to the manifest weight of the evidence, and so it must be confirmed.

In view of our conclusion, we need not consider whether notice of an accident was given in proper fashion or whether Lyons was totally and permanently disabled. We affirm the judgment of the circuit court, which confirmed the decision of the Industrial Commission.

*Judgment affirmed.*