RICKY WITT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Chicago Transit Authority, Appellee).

First District (Industrial Commission Division)   No. 1—89—0715WC

Opinion filed March 16, 1990.

Reibman, Hoffman & Baum, of Chicago (Lewis P. Gaines, of counsel), for appellant.

Vincent J. Getzendanner, Ltd., of Chicago (Vincent J. Getzendanner and David A. Upah, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Ricky Witt, sought worker's compensation benefits after he suffered back injuries allegedly as a result of three separate accidents which occurred over a three-year period while petitioner worked for respondent, the Chicago Transit Authority (CTA). While the arbitrator wrote three separate decisions, the Industrial Commission (Commission), the trial court and this court have considered the three claims together.

Petitioner began working for the CTA in 1972. At the time of the accidents he was a supervisor. It is undisputed that he is now permanently disabled due to continued back pain and weakness and atrophy of the lower right leg.

The first accident occurred on August 11, 1980 (81—WC—48712), when the 33-year-old petitioner's CTA patrol car was rear-ended while stopped at a red light. The parties stipulated to the occurrence of the accident. Petitioner was hospitalized and received conservative treatment for back pain. He returned to work on December 16, 1980, with-

out restrictions. An arbitrator awarded $268 per week for 20²/₇ weeks as temporary total disability benefits. The Commission affirmed the arbitrator's decision, and the circuit court confirmed that decision. On appeal, the issue is whether the Commission was required to find petitioner's back injury resulting from this accident was completely resolved by December 1980, or was unresolved and aggravated a year or two later by the second or third accidents, thereby causing a permanent disability.

The alleged second accident occurred on August 21, 1981 (81—WC—51638), when petitioner lifted a light box at work and felt severe pain in his lower back and right leg. He was hospitalized for treatment on August 22, 1981. On September 10, 1981, Dr. Richard Gorski performed a lumbar laminectomy at L4-L5, bilaterally. Petitioner remained off work, and on January 15, 1982, he was again hospitalized. Another laminectomy at L4-L5 and disc excision was performed. Petitioner returned to work on April 5, 1982. The arbitrator awarded no benefits, finding that petitioner failed to prove he sustained accidental injuries arising out of and in the course of his employment. The Commission affirmed the arbitrator's decision, and the circuit court confirmed that decision. On appeal, petitioner contends the finding that this injury did not arise out of and in the course of his employment is against the manifest weight of the evidence. The question, then, is whether the Commission was required to find that any accident occurred, or whether the evidence supports its finding that any possible back injury and the two operations were unrelated to the employment.

The third accident occurred on April 28, 1982 (82—WC—32104), several weeks after he returned to work. Petitioner stepped in a pothole at work and experienced back and right leg pain. The parties stipulated to the occurrence of this accident. Petitioner was hospitalized and was treated with bed rest and physical therapy. On May 8, 1982, he was released from the hospital. On May 24, 1982, he returned to work without restrictions.

In January 1983, petitioner's back began hurting. On January 21, he was hospitalized and X rays showed epidural fibrosis at L4-L5. Epidural fibrosis is the formation of scar tissue around the previously operated-on nerve roots where the two laminectomies had been performed. This is a chronic condition that can cause recurrent or permanent, radicular type pains. He received epidural injections and was released on February 3, 1983.

Petitioner worked from February 18 to February 22, 1983. He did not work again until September 16, 1985.

In February, April and August 1983, he was hospitalized for conservative treatment of back pain.

In September 1983, petitioner was hospitalized at Mayo Clinic for treatment and tests. Dr. Gorski testified that he received a letter from Dr. David Wiebers, a neurologist at Mayo, finding petitioner had a chronic back and right lower extremity pain without any evidence of ongoing radiculopathy or myopathy. Dr. Wiebers recommended a conservative program, with physical therapy, a chemical dependency program, and treatment at a pain management center. No surgery was recommended.

On December 22, 1983, Dr. Gorski wrote that the original injury was causally connected to the first accident at work. The subsequent exacerbation at work was also causally connected to the current severe intractable pain condition. He found petitioner permanently and totally disabled.

On December 23, 1983, Dr. McCullough stated that petitioner was disabled as a result of continued low back pain and the atrophy and weakness of the right leg.

In January 1984, petitioner was hospitalized for conservative treatment of back pain.

On March 23, 1984, Dr. Audley Loughran examined petitioner at respondent's request. Dr. Loughran stated that the weakness in the lower right leg was caused by the previous disc pathology.

The arbitrator awarded $348.28 per week for 34/7 weeks as temporary total disability benefits, after finding the accident on April 28, 1982 had been, at most, a temporary aggravation of petitioner's preexisting back condition and did not permanently aggravate that condition. The arbitrator found further that the permanent disability resulted from the two surgical procedures which were performed due to injuries not causally related to the August 1980 and June 1982 work-related accidents.

On December 27, 1984, the arbitrators filed the three decisions referred to above.

In February 1985, petitioner underwent his third and last operation, which consisted of the fusion of the affected portion of the back.

On July 18, 1985, Dr. Gorski testified in an evidence deposition that in the February 1985 surgery, he found large masses of scar tissue. Since then, petitioner had been essentially pain-free. Petitioner had developed a right hemiparesis, in which the right leg lost some of its neurological control of certain muscle groups. Essentially, it results in drop foot, where the foot tends to drag. "Some of that may have been due to the herniated disc, some of it may have been due in part

to the surgery, some of it may have been due in part to the postoperative epidural fibrosis. A combination of events caused him to develop that foot drop."

On September 16, 1985, petitioner returned to work, with various restrictions.

On November 7, 1985, the Commission heard the case, including petitioner's testimony, and received the evidence deposition of Dr. Gorski, and other medical documentation. The case was continued.

On November 29, 1985, Dr. Loughran again examined petitioner. He found "no real neurological finding. He still has a drop foot deformity on the right lower extremity. I would think at this time that this is a permanent finding and therefore I would not expect much return of the strength of his right lower extremity." He noted that the fusion surgery was "progressing nicely." He also noted that petitioner complained of lower back pain with weather changes and after working all day.

On February 3, 1988, the Commission affirmed the arbitrator's decision and adopted all findings in the three cases. It found that since petitioner failed to prove a causal relationship between the April 28, 1982, accident and his condition of ill-being, or that he sustained any permanent disability as a result of that accident, his claims for permanent disability benefits failed.

On February 23, 1989, the circuit court confirmed that decision.

Petitioner's argument on appeal focuses on showing that, contrary to the Commission's findings, the second accident was compensable, and that one, two, or all three of the accidents, either combined or separately, caused his present permanent condition of ill-being.

■ The findings of the Commission on the questions of whether an accident occurred and whether a condition of ill-being is causally related to employment are not to be disturbed unless they are against the manifest weight of the evidence. (*County of Cook v. Industrial Comm'n* (1977), 68 Ill. 2d 24, 368 N.E.2d 1292.) Where there is sufficient support in the evidence, a reviewing court may not substitute its judgment for the Commission's on questions of credibility, the weight to be given medical and other evidence, and the reasonable inferences drawn therefrom. *Castaneda v. Industrial Comm'n* (1983), 97 Ill. 2d 338, 454 N.E.2d 632.

In regard to the first accident, of August 11, 1980, the only dispute is whether or not it was shown to be an unresolved injury which was aggravated, and thus causally connected to the subsequent accidents.

In the first accident, petitioner was stopped at a red light in his

patrol car when it was rear-ended. The car sustained only $222 in damages. He was hospitalized for 10 days, and treated for low back and right leg pain, and for unrelated kidney and prostate problems. On October 8, 1980, he was hospitalized for numerous tests related to his back. All test results were normal. He was hospitalized by still another doctor on November 19 until December 9, 1980, where he received bed rest. Most significant was the fact that petitioner was asymptomatic as of December 9, 1980. Dr. Henry Acuna, the treating orthopedic surgeon, wrote on December 13, 1980: "He was completely asymptomatic at the time of his discharge." According to petitioner, he received no further treatment and took no medication. He returned to work on December 16, 1980, without restriction. He continued to work full time, performing his normal duties, until the second alleged accident occurred, eight months later, in August 1981.

Dr. Gorski, the treating physician beginning in September 1981, traced the permanent disability back to this first accident. He testified that petitioner's being discharged in 1980 as asymptomatic could mean he did "not have a fully ruptured disc initially, and he may have responded like a lot of disks do to conservative treatment, and sometimes they get re-exacerbations. So, that picture is not necessarily completely erroneous. It may have occurred that way." However, the Commission could rely upon the fact that petitioner received no treatment and was taking no medication after he returned to work in December 1980. It was not until August 1981 that he returned for treatment of any kind.

█ The Commission was entitled to find there was insufficient evidence to establish the existence of an injury which nearly a year later would require surgery, ultimately causing scar tissue and permanent disability. The Commission was not required to give weight to petitioner's attempts much later to refer back to this first accident.

In regard to the alleged second accident on August 21, 1981, the issue is whether a work-related accident occurred. Petitioner testified that at 7:30 p.m., he was lifting a one-to-two pound box from his patrol car when he felt pain in his low back and right leg. His boss suggested he "go have a cup of coffee and see if you can shake it off." He worked several more hours and went home at the end of his shift at 11:30 p.m. He then was admitted to a hospital where his wife worked. A myelogram revealed a herniated disc.

On September 10, 1981, Dr. Gorski performed a lumbar laminectomy at L4-L5 bilaterally. On January 15, 1982, Dr. Gorski hospitalized petitioner for back and right leg pain. Dr. Gorski performed a disc excision and lumbar laminectomy at L4-L5. Petitioner returned

to work on April 5, 1982.

Although it is not included in the record on appeal, the parties apparently agree that the August 1981 hospital record indicates petitioner reported having suffered "recurrent episodes of lower back pain with symptoms in his right lower extremity *** since an auto accident, approximately one year ago." In addition, "[s]ix days ago, in bending down to pick something up, his back gave out on him, and he could not arise to a vertical position. In spite of resting at home, he has not had relief." The arbitrator concluded that there was "nothing in the history to indicate that petitioner injured himself on the job," and the Commission adopted that finding.

The Commission could reasonably assign little weight to the history petitioner gave. He testified that after the first accident he returned to work on December 16, 1980, and received no further treatment. His doctor reported he was completely asymptomatic. Thus, his report of "recurrent episodes of lower back pain *** since an auto accident" in August 1980 has no support in the record. Moreover, the reference to bending down "six days ago" and "resting at home" does not coincide with petitioner's testimony that he lifted the box, experienced pain, drove home a few hours later, and immediately went to the hospital.

In addition, the history referred to his picking up "something," but fails to include any mention of the workplace, his work duties, or August 21. (See *Lyons v. Industrial Comm'n* (1983), 96 Ill. 2d 198, 449 N.E.2d 1323; *Caterpillar Tractor Co. v. Industrial Comm'n* (1980), 83 Ill. 2d 213, 414 N.E.2d 740.) Moreover, the described box weighed only one or two pounds, and measured only the size of a large dictionary. Petitioner merely transferred it from one car to another car.

■■ Petitioner argues that the man he was working with when he moved the box, and the boss to whom he later spoke who recommended he have some coffee, were witnesses "in the control of the CTA" and yet they failed to testify, thus leaving his own testimony "uncontradicted." Petitioner bears the burden of establishing that a compensable accident occurred. (*Deere & Co. v. Industrial Comm'n* (1970), 47 Ill. 2d 144, 265 N.E.2d 129.) The employer need not present any evidence. The Commission was not required to believe petitioner's testimony standing alone, particularly in view of the credibility problems petitioner presented in regard to his prior medical history.

■ Petitioner contends that the Commission virtually admitted that the second accident occurred when it found respondent was enti-

tled to a credit of $8,524.80 for prior payment of 31⁵/₇ weeks of temporary total disability. Petitioner argues: "The Commission, in effect, allowed credit *** in the accident of August 21, 1981, in which the arbitrator had found that no accident in fact had occurred. This is inconsistent." We do not agree with petitioner's characterization of the credit stipulations, and, in any event, we are not bound by stipulations as to questions of law. (See *American Pharmaseal v. TEC Systems* (1987), 162 Ill. App. 3d 351, 515 N.E.2d 432.) Moreover, even if respondent voluntarily paid TTD benefits, it would in no way be the equivalent of an admission.

Since the first accident was resolved within a few months, and no second accident was proved, we turn to the final accident as the only possible work-related cause of petitioner's present condition of ill-being.

Thus, in regard to the final accident, on April 28, 1982, the issue is whether it caused the permanent disability from which petitioner now suffers. Petitioner had returned to work on April 5, 1982. On April 28, 1982, he stepped into a pothole and experienced low back and right leg pain. On the following day he was admitted to the hospital and treated with medication and bed rest. He was released on May 8. On May 24, 1982, petitioner returned to his usual work duties, without restriction. He received no further treatment until January 1983, when his back "started hurting."

In regard to the August 1980 accident, and the laminectomies performed in September 1981 and January 1982, Dr. Gorski testified that a ruptured disc could manifest pain within hours, or could be of a gradual onset, "perhaps over a period of weeks." However, there could be "an initial injury and a weakening of the casing around the disc with subsequently slow extravasation of disc material with slowly increasing symptoms and pain. So, it can follow different pictures."

The Commission could discount Dr. Gorski's opinion due to the fact that what little medical history Dr. Gorski knew was learned from petitioner. The Commission could find it very significant that Dr. Gorski had seen no medical records prior to August 1980. Dr. Gorski was not aware of any similar problems prior to the August 1980 car accident.

Respondent places considerable weight on its argument that petitioner blatantly lied to the arbitrator and kept Dr. Gorski in the dark about his prior medical history. Respondent established this concealment during its cross-examination of petitioner.

Petitioner testified on direct examination that prior to the 1980 accident, he had only experienced a few illnesses or accidents. In 1967

he had an appendectomy. In 1969, he was in a minor car accident and he strained his neck and was hospitalized for a week or two. In 1973 or 1975, he had a prostate infection.

On cross-examination, it was revealed that petitioner had been hospitalized at least 10 times prior to his first claim. Almost every hospitalization included complaints of back pain. Petitioner maintained in his responses to those questions that the backaches before August 21, 1980, were different than those following the work accidents. "It wasn't actually back pain, sir, it was called prostatitis, and you get a backache from it, but it doesn't radiate down your legs or anything like that. Petitioner denied being addicted to Demerol.

Petitioner "vaguely" remembered that in September 1976, a one-week hospitalization involved a prostate infection. He complained of a backache. He did not know what pain medication was given.

He recalled a December 1976 hospitalization involving "a black speck in the urin[ary] tract, and it was removed." He complained of aching and burning "near his butt," and not a radiating back pain. He believed they did surgery to scrape the prostate area. He did not recall what type of pain medication he received.

Petitioner also recalled a February 1978 11-day hospitalization following a fall on ice. An orthopedic surgeon was called in, and petitioner related a four-year history of pain near his tailbone and "hurting all the time around my testicles." Petitioner denied giving a history of back problems. He was treated with pain medication.

He initially did not recall a September 1978 six-day hospitalization, but then stated it was probably to scrape the prostate again. He had complained of backaches which centered near his tailbone.

He believed an October 1979, 10-day hospitalization involved a problem with the urinary tract. If the records showed a lumosacral sprain, they were incorrect. An EMG was done, but it did not relate to a nerve test on his legs.

In January 1980, a five-day hospitalization involved chest pains and anxiety. He was discharged on February 1, 1980, and readmitted on February 2 by another doctor. He believed the readmission was done at the recommendation of the first doctor. He believed they discovered a hernia at that time.

In February 1980, there was also a one-night hospitalization for a test involving sticking "a tube down my throat." From February 21 through March 6, 1980, and from March 6 through March 12, 1980, two hospitalizations involved chest pains and urinary tract problems.

Petitioner recalled an early August 1980 hospitalization which lasted two or three days, and involved a "backache," which was dif-

ferent from the type of back pain suffered after the accidents. He received pain medication, "something like an aspirin or something."

Ten days later, on August 11, 1980, the first of the alleged work-related accidents involving his back occurred.

In sum, it is notable that when asked about his prior illnesses, petitioner omitted almost all of those listed above, including the hospitalization for a backache 10 days before his first accident. During cross-examination, petitioner admitted to the numerous hospitalizations, although he characterized the backaches as prostate or urinary tract related and not related to any disc problems.

Thus, petitioner's credibility and the foundation of Dr. Gorski's opinion on causation suffered considerably from this testimony regarding medical treatment of back complaints. Dr. Gorski stated that if there had been complaints of back pain prior to August 1980, he would consider it. It could affect his opinion on the original cause depending "on whatever that data was and what the complaints were, the nature of the complaints, physical findings, et cetera."

Because Dr. Gorski did not have this information, petitioner's attorney at the deposition briefly described to him a history of a 1969 neck injury, prostate and kidney infections, backaches, and the 10 hospitalizations. He read petitioner's testimony describing the pain as an aching near his tailbone.

In regard to that previous history of prostate and kidney problems, Dr. Gorski testified that he was not an expert in those areas, but that they could cause mimic backaches. He stated that the kind of pain petitioner described, in the buttocks, groin, and sometimes even in the lower back, could be caused by a swollen prostate or kidney problem. The cause of the discomfort was easily distinguished from a back problem. Dr. Gorski could not know, however, whether petitioner suffered for a decade previous to the first accident from prostate infections, from a deteriorating back problem, or from a gradually increasing dependency on narcotic pain medication.

In view of Dr. Gorski's lack of knowledge of over 10 years of relevant medical records, the Commission was not required to adopt his opinion on causation.

■ To summarize, we hold that the commission was entitled to find: The injuries resulting from the August 1980 work-related accident were resolved within a few months. There was no work-related accident in August 1981. The surgical operations on the herniated disc in September 1981 and January 1982 were unrelated to the employment. The April 1982 work-related accident was minor and required no surgery. The 1985 fusion surgery was not work related because it

corrected the residual effects of the two previous operations, which were not work related. Thus, the evidence permitted the Commission to conclude that the permanent disability of drop foot or continued back pain is not related to the employment.

For these reasons, the judgment of the circuit court of Cook County, confirming the decision of the Industrial Commission, is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.