RICHARD ADAMS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Neon Sign, Appellee).

Fifth District (Industrial Commission Division)   No. 5—92—0598WC

Opinion filed May 25, 1993.

Serkland & Muelhausen, of Chicago (James C. Serkland, of counsel), for appellant.

James K. Keefe, of Keefe & DePauli, P.C., of Fairview Heights, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellant, Richard Adams (the claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) contending he suffered injuries arising out of and in the course of his employment with the appellee, Neon Sign (the employer). On March 21, 1986, the claimant filed a petition for immediate hearing under section 19(b—1) of the Act (820 ILCS 305/19(b—1) (West 1992)) seeking temporary total disability (TTD) benefits and payment of medical expenses. The arbitrator found the claimant was temporarily totally disabled for a period of $25^{3}/_{7}$ weeks. Regarding medical expenses, the arbitrator determined the claimant had exhausted his two independent choices for treating physicians and that, under section 8(a) of the Act (820 ILCS 305/8(a) (West 1992)), he was responsible for the cost of all subsequent treatment sought without the approval of the employer.

On review, the Industrial Commission (Commission) found the claimant was temporarily totally disabled (TTD) through the date of the hearing on the section 19(b—1) petition (May 6, 1986) and increased the claimant's benefits accordingly. The Commission concurred in the arbitrator's finding that the claimant had elected his two health care provider choices for which the employer was liable, and that the claimant was responsible for the expenses arising from subsequent medical treatment. The Commission remanded the cause for further proceedings, unless a timely appeal from its decision was sought. No appeal was pursued.

On remand, the cause came on for a second section 19(b—1) hearing before the arbitrator (February 16, 1989), wherein the claimant sought additional TTD benefits and medical expenses. On March 22, 1989, the arbitrator denied additional disputed TTD benefits. The arbitrator denied certain medical expenses, relying on the Commission's earlier determination on the "third choice" issue. The Commission in pertinent part affirmed. The claimant sought review in the circuit court, which confirmed. The claimant now appeals.

At the first section 19(b—1) hearing (May 6, 1986), the claimant testified he began working for the employer's sign business in March of 1984. He basically worked as a painter. On October 3, 1984, the claimant was helping to unload a 500-pound crate from a truck. While moving the crate, the claimant felt a pull in his neck and back. The record shows that on October 12, 1984, the claimant sought treatment from William G. Patterson, a chiropractor. Patterson treated the claimant on a number of occasions through October 20, 1984. Shortly

thereafter the claimant went to another chiropractor named Reed. Reed treated him on five occasions in late October 1984.

The claimant testified his condition grew worse. On November 5, 1984, the claimant was admitted to Marion Memorial Hospital under the treatment of Dr. Mannil Ravindranathan, a/k/a Ravin. X rays showed a normal cervical spine. While in the hospital, the claimant was examined by Dr. R.L. Morgan. Morgan diagnosed a cervical strain and recommended cervical traction, analgesics, muscle relaxants, and cervical isometric exercises. The claimant was discharged on November 8, 1984, and prescribed medication and physical therapy. The final diagnosis was a cervical strain.

Ravin referred the claimant to Dr. Carey Campbell in Paducah, Kentucky, who hospitalized the claimant from November 11, 1984, to November 13, 1984. A myelogram was performed. The myelogram revealed a degenerative change with osteophyte formation at the C6-C7 level, with resulting impression on the contrast column. The claimant was diagnosed with C7 radiculopathy. Radiculopathy is a disease process affecting the nerve root; in this case, just above the seventh cervical vertebra. (It should be noted, the record reflects a 1972 spinal fusion at the C5-C6 level.)

The claimant testified Campbell recommended surgery and wanted to do a CAT scan in preparation for the operation. However, the claimant was not able to tolerate the CAT scan procedure. He asked Campbell if he could return home and try bed rest to alleviate his condition. The claimant testified that Campbell agreed. The claimant testified he went back to Campbell seven weeks later. He testified Campbell examined him in the waiting room and told him to seek treatment elsewhere. A report by Campbell dated January 8, 1985, states that Campbell had recommended the claimant remain in the hospital beyond November 13, 1984; however, the claimant refused and left the hospital. In the report, Campbell accused the claimant of "manipulative behavior." He told the claimant he had no further treatment recommendations at that time.

The claimant returned to Ravin, who referred him to Dr. Kenneth Smith. Smith saw the claimant on four occasions from January 23, 1985, to August 28, 1985. According to Smith's deposition, he did not view the claimant as a candidate for surgery. He stated the claimant needed to lose weight and exercise. He also recommended the claimant be encouraged to return to work.

The claimant was seen at the employer's request by Dr. Herbert E. Rosenbaum on May 9, 1985. Rosenbaum found a normal neurological condition; however, he recommended the claimant have a CAT

scan to rule out any structural problems in the neck. Rosenbaum examined the claimant again on July 30, 1985. A CAT scan was also conducted that day. Rosenbaum's report indicates that a problem with the results made it impossible to evaluate the claimant's condition below the C6 level. Rosenbaum recommended that if the claimant continued to have problems he should have a "definitive" myelogram to determine what further treatment might be necessary.

The claimant underwent physical therapy from September 7, 1985, through October 1, 1985.

The record shows Ravin released the claimant for light-duty work on January 14, 1985, and again on October 22, 1985. The claimant testified he returned to the employer, who told him there was no work for him. The claimant also attempted to work for a brief period of time selling advertising space for a newspaper. However, he was unable to continue at this job because of the condition of his back and shoulders.

The claimant's condition appears to have worsened in late 1985 and early 1986. In January of 1986, Ravin recommended the claimant see Dr. Alan Froehling, an orthopedic surgeon. In March, April, and May of 1986, the claimant was examined by Froehling and on referral by Dr. Pritam Sahni.

The claimant was hospitalized by Froehling for tests on March 10, 1986. The hospital discharge report contains a diagnosis of right C7 radiculopathy. The report recommended continued conservative treatment. The April 12, 1986, report of Sahni recommended continued graduated traction. In his deposition, Froehling stated he strongly recommended surgery; however, he stated that he would defer to Dr. Sahni's decision. The record was left open by the arbitrator for the submission of Sahni's opinion. The evidence was never presented.

The employer offered the written opinion of Dr. Rosenbaum, dated May 5, 1986. After reviewing the March 1986 test results, Rosenbaum found no evidence of disc disease. He was of the opinion the claimant could return to work with limitations resulting from the 1972 spinal fusion.

On May 29, 1986, the arbitrator entered a decision on the claimant's section 19(b—1) petition. The arbitrator found the claimant had sustained accidental injuries arising out of and in the course of his employment on October 3, 1984. The arbitrator found the claimant was entitled to TTD from November 5, 1984, to January 13, 1985, and from May 9, 1985, to August 8, 1985, a period of 25$\frac{3}{7}$ weeks. In addition, the arbitrator found the claimant had chosen chiropractors Patterson and Reed to treat him in October of 1984. The arbitrator

found this constituted his two employer-paid treatment choices allowable under section 8(a) of the Act. Therefore, the claimant, and not the employer, was responsible for expenses incurred in the claimant's treatment by Ravin and the subsequent referrals from Ravin.

On September 17, 1986, the Commission modified the TTD award, finding the claimant was temporarily totally disabled from November 5, 1984, through the date of the May 6, 1986, hearing before the arbitrator, a period of 76$^{6}/_{7}$ weeks. The Commission also found the claimant had seen his first and second choice physicians in October of 1984, and that all subsequent hospitalizations, treatments by Ravin, and referrals were the claimant's responsibility. The Commission stated the cause was remanded to the arbitrator for further proceedings pursuant to *Thomas v. Industrial Comm'n* (1980), 78 Ill. 2d 327, 399 N.E.2d 1322, but only after the expiration of the time for filing a petition for summons had expired without a filing, or after the completion of judicial proceedings if such petition were filed. No appeal was taken from the Commission's decision, and the cause was remanded for further proceedings before the arbitrator.

A second hearing was held on February 16, 1989. The claimant again sought TTD benefits and payment of medical expenses. The parties agreed the hearing concerned matters arising since the May 6, 1986, hearing. The employer conceded that TTD benefits were due and payable from the date of the first hearing through December 11, 1987. The claimant maintained he was entitled to TTD through December 27, 1988.

At the second hearing, the claimant testified that following the Commission's decision in September of 1986, the employer sent the claimant back to Dr. Rosenbaum. Rosenbaum hospitalized the claimant from October 13, 1986, to October 17, 1986, at Barnes Hospital in St. Louis for tests. A myelogram and EMG were performed. Rosenbaum's report, dated November 18, 1986, relates the EMG showed no significant changes indicative of nerve damage. Rosenbaum recommended conservative treatment. Because the claimant's symptoms continued, Rosenbaum recommended a second opinion from a neurologist.

The claimant testified the employer chose Dr. Francis Walker for the claimant's treatment. The claimant was examined by Walker in June of 1987. Walker reviewed the results of the tests taken at Barnes Hospital in October 1986. Walker recommended intensive physical therapy. The claimant underwent physical therapy from September 7, 1987, to November 13, 1987.

In a letter dated November 16, 1987, Walker states that the claimant reported his condition had worsened after undergoing the physical therapy. The claimant complained of pain in his neck radiating to the right medial scapular area. He also had pain in his shoulder and down his right arm. Walker did not believe the claimant would benefit from additional surgical procedures. He recommended that the claimant continue treatment with his local physician.

In a letter dated November 30, 1987, Walker stated that based on his last examination of the claimant, he believed the claimant capable of returning to work. However, the claimant would have to limit his lifting and shoulder movements for about three weeks. In a second letter dated December 7, 1987, Walker opined the claimant could return to work as of that date.

Similarly, Rosenbaum released the claimant to return to work on January 28, 1988. In that report, Rosenbaum states, "In my opinion, this man continues to have a normal neurologic examination without any evidence of disorder of the central or peripheral nervous system. What initially may have begun as a strain seems to have persisted at least in the subjective symptoms, the basis of which I cannot determine, nor can I find a neurologic basis that would be evident to disqualify him from his usual work activity ***."

The claimant attempted to testify as to what Walker and Rosenbaum said to him at their last respective appointments. Following objections by the employer's counsel, which the arbitrator sustained, the claimant made offers of proof. The arbitrator denied the offers of proof.

The record shows that on March 14, 1988, the claimant was examined by Dr. David R. Lange. On May 25, 1988, Lange performed a right C7 decompression with excision of uncinated spurs and an anterior cervical fusion. The claimant testified he experienced some relief following the surgery. Lange released the claimant on December 27, 1988.

The arbitrator denied TTD benefits after December 11, 1987, based on the opinions of Drs. Walker and Rosenbaum. The arbitrator stated that without reaching the issue of medical necessity, he found the Commission had already ruled on the section 8(a) issue, and therefore, the employer was not responsible for medical treatment other than the expenses incurred in treatment by Rosenbaum and Walker.

On June 4, 1990, the Commission issued a decision finding the claimant was temporarily totally disabled through December 28, 1987, based on the opinions of Rosenbaum and Walker. The Commission noted it had previously found the claimant went beyond the chain of

referral from his first two health care choices and, citing *res judicata* principles, agreed with the arbitrator that under section 8(a) the employer was not liable for medical expenses other than those connected with the treatment by Rosenbaum and Walker. The Commission did not specifically address the arbitrator's decision to deny admission of the claimant's testimony concerning statements by Walker and Rosenbaum.

In a summary order, the circuit court of Williamson County confirmed. The claimant brings the instant appeal.

On appeal, the claimant argues the arbitrator and the Commission erred in refusing to admit the claimant's testimony regarding statements made to the claimant by Rosenbaum and Walker. Although the issue was raised before the Commission, the Commission did not specifically address it. The claimant argues, as he did before the arbitrator, that since the doctors were chosen by the employer, they are agents of the employer. Therefore, the claimant's testimony was admissible hearsay as admissions against interest. The statements contrast with the written statements of the doctors releasing the claimant to return to work.

The employer contends the Act requires them to provide needed treatment to the claimant. After the first hearing, the claimant had a continuing need for medical care. The employer therefore sent the claimant to Rosenbaum and Walker. The employer argues Rosenbaum and Walker cannot be the employer's agents since the employer was required to provide medical care. The employer argues that the relationship with the doctors was not voluntary and that it had no choice but to send the claimant to the doctors.

At the hearing, the claimant attempted to testify as to what Walker said the last time he visited Walker's office. The employer raised a hearsay objection. The arbitrator, finding Walker was not an agent of the employer, sustained the objection. In making an offer of proof, the claimant's attorney stated, "[I]f the witness were permitted to testify [he would state] that Dr. Walker looked at his papers in his hand, looked at the Petitioner and said, [']I don't know why you're here. I told the insurance company I didn't want to see you. As far as I'm concerned, I'm not your doctor and you can go and seek treatment wherever you want but I'm done with you.['] And that he then walked out of the office over to his receptionst [*sic*] at the entry area, put the file down in front of her and said, [']tell them I don't want to see this man.[']" The offer of proof was denied.

Under a similar scenario, the claimant's attorney made the following offer of proof concerning the claimant's last appointment with

Rosenbaum: "[H]e would state that Dr. Rosenbaum discussed the possibility of surgery of the neck and in his opinion, he wouldn't do it but that he would arrange for him to see some other physician for consultation."

In support of his contention the testimony was admissible because the doctors were agents of the employer, the claimant cites *Nollau Nurseries, Inc. v. Industrial Comm'n* (1965), 32 Ill. 2d 190, 204 N.E.2d 745, and *Keystone Steel & Wire Co. v. Industrial Comm'n* (1969), 42 Ill. 2d 273, 246 N.E.2d 228.

In *Nollau*, the claimant initially sought treatment from his family physician. The claimant returned to work some six months later and filed an application for adjustment of claim. Thereafter, the compensation carrier referred the claimant to a doctor in St. Louis, who subsequently operated on the claimant. On appeal, the employer contended the claimant was erroneously allowed to testify as to what this doctor told him. The employer also objected to the admission of the doctor's written report. The Illinois Supreme Court, without discussion or citation to authority, found no error.

In *Keystone Steel*, the employer challenged the admission of a medical report prepared by a doctor who examined the claimant at the employer's request but did not furnish treatment. Citing *Nollau*, the court held the report was properly admitted. The court stated that in *Nollau* it had upheld the admission of the report on the ground the doctor was an agent of the employer or the insurance company. The court further held the fact the doctor was a nontreating physician was of no consequence.

■ The case law supports a finding that Rosenbaum and Walker were agents of the employer and that the arbitrator erred in excluding the testimony. However, we also find the offers of proof were insufficient to render the Commission's decision against the manifest weight of the evidence. The written opinions of Rosenbaum and Walker that the claimant could return to work as of December 1987 are sufficient to support the Commission's determination. In general, the Commission's determinations will not be set aside if there is credible evidence in the record to support them. *Lyons v. Industrial Comm'n* (1983), 96 Ill. 2d 198, 449 N.E.2d 1323.

■ Additionally, the claimant makes the assertion that Walker and Rosenbaum refused to treat the claimant; therefore, he was entitled to seek further treatment and the employer should be liable for this additional expense. The record discloses that Walker and Rosenbaum did not refuse to treat the claimant. Rosenbaum hospitalized the claimant in October 1986 to conduct a myelogram and EMG to deter-

mine the extent of claimant's problem. After reviewing the results, Rosenbaum recommended physical therapy. Walker concurred in this opinion in June of 1987. Walker then arranged for the claimant to undergo physical therapy in the fall of 1987. After this treatment, Rosenbaum and Walker released the claimant to return to work. There is no basis for the claimant's contention these doctors refused to treat him.

●3 The claimant also raises certain factual assertions as grounds for asserting the Commission erred in not awarding expenses connected with Lange's treatment. He asserted at oral argument that the myelogram used by Rosenbaum in assessing the claimant's condition was inadequate because it did not show the C6-C7 area. The record shows that a myelogram was conducted at Rosenbaum's instruction in July of 1985. Unfortunately, this test did not show the claimant's neck below the C6 level. Rosenbaum noted this problem in his August 1985 report. As mentioned above, a myelogram was again conducted in October of 1986 at Rosenbaum's direction. There was no problem with this test. Rosenbaum relied on the results of this test in making his evaluation. The record does not support the claimant's assertion that Rosenbaum relied on the faulty 1985 myelogram in recommending conservative treatment in November of 1986.

The claimant also asserts surgery that was "reasonably required," and that under such circumstances, section 8(a) should not prevent him from recovering expenses related to Lange's treatment. Neither the arbitrator nor the Commission reached the issue of medical necessity. The Commission found that in the original section 19(b—1) decision it determined the claimant had exhausted his two choices of treating physicians allowed him under section 8(a). Thereafter, the claimant had to get the approval of the employer or seek further treatment at his own expense. The claimant took no appeal from this decision, and this finding was binding on him in the subsequent proceedings.

The claimant sought treatment from Lange in March of 1988, after Rosenbaum and Walker released him to return to work. The claimant did not receive approval from the employer for this treatment. The Commission determined that, based on its earlier decision, the employer was not responsible for these costs. We find no error in this conclusion.

■ The claimant also contends the Commission erred in not awarding TTD for the period from December 28, 1987, to December 28, 1988. Before the arbitrator, the employer agreed the claimant was entitled to TTD through the date of his release by Rosenbaum and

Walker. He contends that even though medical benefits are denied on a "third choice basis," it does not necessarily follow that the claimant is not entitled to TTD. He argues he should receive TTD benefits even though he pursued further care at his own expense.

In connection with this argument, the claimant asserts the Commission, in increasing the TTD award in the initial review, misled him into believing surgery was necessary. The claimant maintains the Commission, in its September 1986 decision, found that the claimant should have surgery and that he relied on this finding in seeking treatment from Lange. Review of the decision finds no support for this claim. The Commission cited the conflicting medical opinions in finding the claimant temporarily totally disabled through the date of the May 6, 1986, hearing before the arbitrator. The Commission's statements do not amount to a finding that surgery was necessary.

It is primarily the responsibility of the Commission to determine questions of fact, including the nature and extent of the disability, to draw reasonable inferences from the evidence, and to determine the credibility of the witnesses. *Van Overmeiren v. Industrial Comm'n* (1981), 84 Ill. 2d 374, 418 N.E.2d 714.

We find the Commission's determination that the claimant was temporarily totally disabled through December 28, 1987, was not against the manifest weight of the evidence. Drs. Rosenbaum and Walker released the claimant to return to work in December of 1987. Based on these releases, the Commission could conclude the claimant was not temporarily totally disabled after that date.

For the forgoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.