2020 IL App (3d) 200027WC-U
No. 3-20-0027WC
Order filed November 10, 2020

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION
_____

| | | |
|---|---|---|
| JASON DALLEFELD, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Will County |
| v. | ) | No. 18MR2958 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.* (Five Star Fitness and Clubs | ) | Honorable |
| at River City, Inc., Defendants-Appellees). | ) | John C. Anderson, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Hudson, and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Commission's decision to award claimant benefits under the Workers' Compensation Act for his August 2009 work-related accident was not against the manifest weight of the evidence. The Commission's decision to deny claimant benefits under the Workers' Compensation Act by reason of claimant's failure to prove that he suffered an accident which arose out of and in the course of his employment for the 2013 and 2014 alleged incidents was not against the manifest weight of the evidence.

¶ 2    The Workers' Compensation Commission (Commission) found that in August 2009, claimant, Jason Dallefeld, sustained a compensable injury to his right knee while working

for respondent, Five Star Fitness. The Commission awarded benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)). However, the Commission also found claimant failed to prove he had sustained four other alleged work-related accidents in 2013-2014 while working for respondent, Clubs at River City. Claimant sought judicial review of the Commission's decision before the circuit court of Will County. The court confirmed the Commission's decisions in full. Claimant appeals, arguing the Commission's decision finding (1) no causal relationship between his August 2009 work-related accident and his current condition of ill-being and (2) that he did not sustain four separate work-related accidents between 2013 and 2014 which arose out of and in the course of his employment were against the manifest weight of the evidence.

¶ 3                                        I. BACKGROUND

¶ 4         On March 16, 2017, the arbitrator heard evidence on claimant's five separate right knee claims. The claims were consolidated. Claimant, 38 years old at the time of the hearing, testified substantially as follows.

¶ 5         Claimant began working as a fitness consultant for Five Star Fitness in July 2009. On August 29, 2009, while Five Star Fitness was undergoing a renovation, claimant and his supervisor, Brian Kelly, the facility manager, were moving treadmills. Claimant picked up one end and Kelly the other. A member's water bottle that had been left on the treadmill began to roll toward claimant and fell to the floor. Claimant tried to kick the bottle out of the way while still carrying the treadmill. Claimant's foot rolled on top of the bottle. He went into a "deep squat" and his knee popped. He said, "It popped and then from there within a matter of seconds it was swollen." The pain was "excruciating" and radiated down the middle of his calf. He finished his shift and continued on full duty thereafter.

¶ 6        Kelly took claimant to Physicians Immediate Care. The attending physician took X-rays, which were negative; diagnosed claimant with a right knee strain; dispensed crutches and a knee support; prescribed an anti-inflammatory; recommended, but did not order, a magnetic resonance imaging (MRI); and placed claimant on desk duty for three days until his follow-up visit. Claimant did not attend the follow-up visit because he said he was told not to.

¶ 7        Claimant said his injury improved though he continued to experience pain. He continued to work out, trying to improve the strength in his hamstrings, which helped the pain in his knee. He left Five Star Fitness in October 2009 and began his employment with SC2 as a safety coordinator. He worked at SC2 for two to three years. His job duties included helping employees complete work-related-injury forms. In doing so, he "f[ound] out [he] actually had rights that [he] could go get treatment for the knee[.]" He said, "Once I found out the company was actually responsible for the injury, that's when I went and saw my doctor immediately."

¶ 8        On July 18, 2012, almost three years after his August 2009 injury, claimant sought treatment from his general practitioner, Dr. Daniel Hoffman. Dr. Hoffman ordered an MRI, which was performed on July 19, 2012, and revealed a bucket-handle tear of the lateral meniscus. Dr. Hoffman referred claimant to orthopedic surgeon Dr. Blair Rhode.

¶ 9        Dr. Rhode recommended surgery to repair the tear. Claimant sought authorization from Five Star Fitness for the surgery. Claimant continued to see Dr. Rhode every two to three weeks while authorization was pending.

¶ 10       On January 31, 2013, Five Star Fitness sent claimant to an independent medical examination (IME) with board certified orthopedic surgeon Dr. Lawrence D. Lieber. After reviewing the medical records, including the MRI, and conducting a physical examination, Dr. Lieber opined that claimant had not suffered a work-related accident in August 2009 that resulted

in a bucket-handle tear of the meniscus. In Dr. Lieber's opinion, if claimant sustained a "significant" tear, he would "have had significant symptomatology on a regular basis that would have required significant medical treatment." Instead, claimant showed minimal complaints, indicating to Dr. Lieber that "the mechanism injury was minor." Dr. Lieber believed claimant reached maximum medical improvement (MMI) in association with his August 29, 2009, injury on September 1, 2009.

¶ 11		In his deposition taken on June 6, 2013, Dr. Lieber testified based upon his review of claimant's history and condition, "there was no direct relationship between the August 2009 event and the [claimant]'s present state of ill-being." Dr. Lieber continued:

> "I felt that the mechanism of injury as explained to me by the [claimant] was not significant enough to cause a [bucket]-handle tear of the medial meniscus. I felt that the lack of medical care for a period of three years, almost three years, was significant in that if there had been a significant meniscal tear as indicated in the MRI, the [claimant] would have been unable to carry on activities of daily living or any normal functions without significant pain and would have required and sought treatment prior to three years."

¶ 12		On cross-examination, Dr. Lieber explained that going into a full squat while holding a treadmill, as claimant had described, would not be "significant enough of an injury to cause that type of tear." He said a "complete tear of the lateral meniscus" would be "associated with a high-contact, twisting injury with forces much greater than squatting, holding [one end of a treadmill]." Dr. Lieber reiterated that if claimant had a bucket-handle tear in 2009, "there is no way he would not have sought medical treatment for three years." Claimant would have experienced a lack of motion, swelling, and significant functional disabilities. Dr. Lieber agreed

surgical repair would be reasonable.

¶ 13        In the meantime, during 2013, claimant began working full time at Clubs at River City as a membership director. He testified he sold memberships and performed personal workouts. He described four accidents he experienced while on the job at Clubs at River City. He testified that on September 13, 2013, he slipped and fell on a floor mat, landing on his right knee. On January 31, 2014, he hopped over the front desk and hurt his right knee. On February 27, 2014, he was carrying a box of paper when he turned the corner and twisted his right knee. He heard it pop. On March 5, 2014, he was carrying boxes downstairs and he over-stepped the last step causing all his weight to shift to his right knee. He said, "that put me down to the ground." He testified he had notified Lisabeth "Lizzy" Robinson (Lizzy) of each accident. However, Lizzy later testified that she had not received an accident report for any of the incidents.

¶ 14        During the time frame of these four accidents at Clubs at River City, claimant continued his treatment with Dr. Rhode. He said he told Dr. Rhode about the September 13, 2013, and March 5, 2014, accidents because those "were the two big ones." Although he had continued full duty after each incident, Dr. Rhode took him off work completely on March 26, 2014. Clubs at River City terminated claimant on June 1, 2014. Dr. Rhode ordered another MRI, which was done on March 21, 2014, but showed no changes. He performed claimant's meniscus repair surgery on June 17, 2014. On February 26, 2015, Dr. Rhode released claimant from treatment at MMI with permanent "medium heavy" duty restrictions.

¶ 15        Claimant testified he continues to experience pain in his right knee and has a "weird limp in [his] right leg." He can no longer run, do squats, ride his mountain bike, or play softball.

¶ 16        Claimant introduced the October 23, 2013, deposition of Dr. Rhode. The doctor testified he had reviewed Dr. Lieber's IME report. With regard to that report, Dr. Rhode stated:

"I disagree with Dr. Lieber that a bucket-handle tear would have resulted in consistent and persistent significant symptomatology, and my specific point was that a reduced meniscus, be it bucket-handle or be it horizontal cleavage or any other tear pattern, as long as it's reduced people can live with them.

They'll have symptoms, but they're not debilitating, especially on the lateral side. Only when the meniscus displaces does it cause significant symptomatology."

¶ 17    Five Star Fitness presented the testimony of Robert Reszel Jr., a one-third owner of the company. Reszel said he would go into the business every day "sometimes for a few hours." The other two owners were not often there, if ever. He said he was not made aware of claimant's August 2009 accident and claim until 10 days before the hearing. He often spoke with his partners and neither mentioned claimant's accident, so he knows they were unaware of it also.

¶ 18    Clubs at River City presented certified copies of claimant's conviction in a Peoria County case of misdemeanor theft for credibility purposes. It also presented the deposition testimony of Dr. Nikhil Verma, who had performed an IME of claimant on December 8, 2014. Dr. Verma testified he had reviewed claimant's medical records from Drs. Hoffman and Rhode, including the July 2012 MRI and the March 2014 MRI. Dr. Verma noted no change or progression in the bucket-handle tear. Upon his physical examination of claimant, Dr. Verma diagnosed claimant with "status post partial lateral meniscectomy, right knee with persistent post-meniscectomy with mild subjective discomfort." In his opinion, claimant's current symptoms were unrelated to the accidents in 2013 and 2014. The 2014 MRI showed no anatomic change or material worsening of the condition that "would indicate additional anatomic injury related to the 2013 or 2014 injury events." The doctor found claimant's objective examination to be normal but noted claimant's "persistent subjective lateral-sided knee pain." As far as Dr. Varma was

concerned, there was no indication for further treatment.

¶ 19      On May 8, 2017, the arbitrator issued a decision, in which she found claimant sustained an accident that arose out of and in the course of his employment on August 29, 2009, timely notice of the accident was given to Five Star Fitness, and claimant's current condition of ill-being is causally related to the accident. The arbitrator ordered Five Star Fitness to pay reasonable, necessary, and causally related medical expenses, temporary total disability (TTD) benefits for 48 1/7 weeks in the amount of $467.79 per week for the time period of March 26, 2014, through February 25, 2015, and permanent partial disability (PPD) benefits for 32.25 weeks in the amount of $420.65 per week representing 15% loss of claimant's right leg.

¶ 20      The arbitrator found claimant did not sustain accidental injuries on September 13, 2013, January 31, 2014, February 27, 2014, or March 5, 2014, while working for Clubs at River City. Any injury on these dates "caused only minor or temporary exacerbations of [claimant]'s long standing preexisting right knee condition insufficient to result in a finding of new accidental injury or sufficient aggravation of the preexisting injury." The arbitrator denied all benefits relating to these claims.

¶ 21      On October 29, 2018, the Commission modified the arbitrator's decision, vacating the TTD award and reducing the PPD award. The Commission found, based on the evidence, that claimant suffered only a right knee strain, not a bucket-handle tear in his meniscus, as a result of the August 29, 2009, accident. The Commission found that because claimant resumed his full duties within a few weeks, he had reached MMI on September 15, 2009. The Commission ordered Five Star Fitness to pay the medical expenses for treatment rendered at Physicians Immediate Care only. The Commission reduced the PPD benefits to reflect that claimant sustained the 5% loss of use of the right leg to be paid at the sum of $420.65 per week for 10.75 weeks. The Commission

otherwise affirmed and adopted the arbitrator's decision.

¶ 22     On January 8, 2020, the Will County circuit court confirmed the Commission's decision.

¶ 23     This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25     According to claimant's first claim for worker's compensation benefits, he injured his right knee at work at Five Star Fitness on August 29, 2008, as he stepped on a water bottle while carrying one end of a treadmill.

¶ 26     After hearing evidence on the right knee injury, the arbitrator made the following findings, among others: claimant suffered an accident that arose out of and in the course of his employment, the diagnosed bucket-handle tear in his lateral meniscus was causally related to the accident, and Five Star Fitness should pay for all reasonable and necessary medical expenses related to the injury and surgery.

¶ 27     The Commission viewed the evidence differently and found no causal connection between claimant's current condition of ill-being and the August 29, 2009, accident. That is, the Commission believed Dr. Lieber over Dr. Rhode on the issue of causation. There was a difference of expert opinion whether claimant's current condition of ill-being was related to the August 2009 event.

¶ 28     "The Commission's determination of factual issues, including the resolution of conflicting medical evidence, and the credibility and weight of testimony, will not be disturbed unless against the manifest weight of the evidence." *McLean Trucking Co. v. Industrial Comm'n*, 96 Ill. 2d 213, 219 (1983). "Fact determinations are against the manifest weight of the evidence only when an opposite conclusion is clearly apparent—that is, when no rational trier of fact could

have agreed with the agency." *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64 (2006). On the question of causation, it would not be impossible for a rational trier of fact to believe Dr. Lieber and to disbelieve Dr. Rhode. See *International Vermiculite Co. v. Industrial Comm'n*, 77 Ill. 2d 1, 3 (1979).

¶ 29 Indeed, claimant testified he resumed his regular duties at Five Star Fitness a few weeks after the injury. He did not attend the three-day follow-up appointment at Physicians Immediate Care because he "was told not to." He said his knee "was getting better" and his pain while sitting down was "tolerable, fine." In fact, he stated there were no job duties that he was unable to perform. He was able to work out "between all of 2009 and February 2010." He said "[i]t took awhile to get the ability to squat." He performed "a lot of hamstring movements, cable, pin loading machines first of all to get the strength back in [his] knee. The stronger [his] hamstrings were, the better [his] knee felt. [He] would work on that quite a bit." He said he "was able to do light squats at some point later on." He did cardio on an elliptical, a "piece of equipment where you sort of glide your legs back and forth." He continued to work out without noted restrictions when he worked at Clubs at River City.

¶ 30 According to Dr. Lieber, claimant would be unable to perform the activities to which he testified without significant pain if he had indeed suffered a bucket-handle meniscal tear on August 29, 2009. Even with a high-pain tolerance, there would be "no way he would not have sought medical treatment for three years." Dr. Verma agreed. A person, like claimant, with a bucket-handle tear of the lateral meniscus would experience symptoms of pain, swelling, and discomfort. On the other hand, Dr. Rhode stated a tear would not necessarily be debilitating. The Commission found Dr. Lieber's testimony and opinion "most consistent with the evidence."

¶ 31 Given this court's standard of review, we cannot say the opposite conclusion is

clearly apparent. See *Ghere v. Industrial Comm'n*, 278 Ill. App. 3d 840, 847 (1996). Because this was a battle of the experts, it was within the province of the Commission to determine which expert to believe.

¶ 32    In *Dexheimer v. Industrial Comm'n*, 202 Ill. App. 3d 437, 442-43 (1990), the court stated:

> "It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980)).

¶ 33    A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts, nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence. *Martin v. Industrial Comm'n*, 227 Ill. App. 3d 217, 219 (1992). Again, for a factual finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 539 (2007). "The test is not whether this or any other tribunal might reach an opposite conclusion but whether there is sufficient factual evidence in the record to support the Commission's determination." *Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405, 415 (2002). "A reviewing court will not reweigh the evidence, or reject reasonable inferences drawn from it by the Commission, simply because other reasonable inferences could have been drawn." *Durand*, 224 Ill. 2d at 64.

¶ 34　　　　Because it is the Commission's function to judge the credibility of witnesses, including expert witnesses, it must determine which testimony is to be accepted where there is conflicting medical testimony presented. *Martin v. Industrial Comm'n*, 91 Ill. 2d 288, 294 (1982). The Commission reasonably concluded, consistent with Dr. Lieber's opinion, that claimant's current condition of ill-being was not related to his August 29, 2009, accident. Dr. Lieber's opinion was supported by reasonable professional explanations and objective medical evidence.

¶ 35　　　　Claimant next contends the Commission's decision that the four accidents he allegedly sustained while working at Clubs at River City did not arise out of and during the scope of his employment was against the manifest weight of the evidence. The purpose of the Act is to protect an employee from any risk or hazard which is peculiar to the nature of the work he or she is employed to do. *Hosteny v. Illinois Workers' Compensation Comm'n*, 397 Ill. App. 3d 665, 674 (2009). Thus, to be compensable under the Act, an employee must establish by a preponderance of the evidence both that his or her injury "arose out of" and "in the course of" employment. *Litchfield Healthcare Center v. Industrial Comm'n*, 349 Ill. App. 3d 486, 489 (2004).

¶ 36　　　　Whether an employee has suffered a work-related accident is a question of fact for the Commission to determine. *Bolingbrook Police Department v. Illinois Workers' Compensation Comm'n*, 2015 IL App (3d) 130869WC, ¶ 38; *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 449 (1995). With respect to factual matters, it is within the province of the Commission to judge the credibility of the witnesses, resolve conflicts in the evidence, assign weight to be accorded the evidence, and draw reasonable inferences therefrom. *Hosteny*, 397 Ill. App. 3d at 674. As such, we will not overturn the Commission's decision on a factual matter unless it is against the manifest weight of the evidence. *Mlynarczyk v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120411WC, ¶ 15. As stated, a decision is against the manifest weight of the evidence only if an

opposite conclusion is clearly apparent. *Freeman United Coal Mining Co. v. Illinois Workers' Compensation Comm'n*, 2013 IL App (5th) 120564WC, ¶ 21. The appropriate test is whether there is sufficient evidence in the record to support the Commission's finding, not whether this court may have reached the same conclusion. *Metropolitan Water District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1013 (2011).

¶ 37    Applying these standards, we cannot say that the Commission's decision that claimant failed to prove that he sustained work-related accidents while employed at Clubs at River City between September 2013 and March 2014 was against the manifest weight of the evidence. The Commission, affirming and adopting the decision of the arbitrator, specifically found that claimant failed to produce any persuasive evidence that such accidents occurred. Lizzy Robinson, the vice president of operations, testified she received no notice of any of the alleged accidents. Claimant's medical records do not document any report of work accidents at Clubs at River City. Claimant himself testified he did not seek any additional medical treatment for the alleged accidents. Based on this record, there is no reason to disturb the Commission's decision denying the accidents and causation.

¶ 38                                 III. CONCLUSION

¶ 39    For the reasons stated, we affirm the circuit court's judgment, which confirmed the Commission's decision.

¶ 40    Affirmed.